# Tiley *versus* Moyers.

*Suspension of Rent by Eviction.—Demise of Coal-Bank at a price per bushel, construed.—Extent of Demise a Question for the Jury.— Damages allowed for interruption of Mining Operations by Estrepements.—Right of Party to cross-examine Witness.*

1. An eviction such as will suspend rent is an actual expulsion of the lessee out of all or some part of the demised premises: the rent already accrued and over due is not forfeited by the eviction, but in an action for such rent, the tenant may defalk the damages caused by it.

2. A demise of a coal-bank for a term of years, in which the rent reserved is a fixed price per bushel for the coal to be taken from the bank, amounts to a sale of so many bushels as the tenant shall take during the term, for the price fixed in the lease.

3. Where the lease described what was let by the lessors as their "coal-bank and the appurtenances thereunto belonging," and did not otherwise describe the premises leased, nor the boundaries, in an action for the rent reserved, in which eviction is set up as a defence, it is for the jury and not for the court to say what was the extent of the demise, it being rather a latent ambiguity to be solved, than an instrument of writing to be construed.

4. Where it was a disputed point as to how much was leased, and the lessor had had undisputed possession of one coal opening; if one only had been leased, the entry of the lessors or others under them upon other parts of the tract, would not be an eviction, and the lessee would be bound to pay for the coal taken by him from that opening.

5. But if the grant was co-extensive with the coal veins of the whole tract, and the lessors, without interrupting the lessee's actual mining operations, entered and took coal from the tract demised, they were guilty of a breach of the implied covenant for quiet possession, and the lessee could set off the damages resulting therefrom, against the claim for rent accrued under the lease.

6. Such an eviction, however, would not suspend the rent, for it was not reserved as an equivalent for the possession of the tract, but for the coal actually taken therefrom.

7. Where ejectment had been brought by the lessors to try the question of forfeiture under a provision of the lease which forbade the tenant to let the mine stand idle for a year, in which they failed, damages therefor could not be allowed by the jury in an action for the rent: but for the estrepement brought

[Tiley v. Moyers.]

by them which interrupted mining operations, damages were properly allowed and assessed by the jury under the charge of the court.

8. Where upon the trial, the commissioner, appointed by agreement to report the quantity of coal mined by the defendant, had produced and identified his report, having been called for that purpose only, he could have been cross-examined by the defendant as to its identity, but not as to the basis on which it was made: to obtain evidence of the contents of the paper, the defendant should have called the witness in chief.

ERROR to the Common Pleas of *Cambria county*.

These were actions of covenant, five in number, brought in the court below to March, June, September, and December Terms, by Michael Moyers and Elizabeth Moyers, for use, &c., against William Tiley, Sr.

The articles of agreement on which suit was brought contained, among others, the following covenant:—

" The said Moyers, of the first part, doth agree to grant, lease, and demise unto the said Tiley their coal-bank and the appurtenances thereunto belonging, together with the privilege of timber for use of coal-bank, for and during the term and space of ten years from the 1st day of March 1852, and to continue until fully complete and ended. In consideration of which, the said William Tiley, Sr., doth bind himself well and truly to put the said coal-bank in good working order, for the rent of the first year, and to pay for the second and third year one-quarter of a cent per bushel for each and every bushel of coal taken from the said bank, and for the remaining seven years one-half cent per bushel for each and every bushel of coal; payment to be made quarterly."

Some time after the date of the agreement, Tiley commenced taking coal from the bank leased, and, except when he was interrupted in his operations by certain writs of estrepement issued in ejectments brought by the lessors, continued to do so; and these actions were brought to recover for the coal taken by the defendant under the agreement, and at the stipulated rate or price, during the periods covered by the declarations filed in the several suits.

The first action claimed for the amount of coal taken between the 1st of March 1853 (the date at which the defendant was to begin to account) until the 1st December 1858—five years and nine months.

The second action claimed for the coal taken from the 1st December 1858 until 1st March 1859—three months.

The third action claimed for the coal taken from the 1st March 1859 until 1st June 1859—three months.

The fourth action claimed for the coal taken from the 1st June 1859 until the 1st September 1859.

And the fifth action claimed for the coal mined and taken from the 1st September 1859 until 1st December 1859.

[Tiley *v.* Moyers.]

By agreement of the parties, the issues in all these cases were tried together, and the evidence applicable to each and all of them heard together; and it was also agreed that any amount ascertained to be due to the plaintiffs, should be found in the last action, and the costs of the other actions should follow the judgment in that one.

To sustain the issues on their part, the plaintiffs gave in evidence the agreement, and then showed by several witnesses that Tiley commenced mining upon the premises embraced in the lease shortly after its date, and continued mining there since. They followed this with the evidence from the books of the defendant (ascertained and reported by John S. Rhey, Esq., a commissioner appointed by agreement for that purpose), that he shipped and sold, between the 1st of March 1853 and the 1st of September 1859 (the period covered by the claims in all the actions),

Coal  .  .  .  .  76,940 bushels.
Coke  .  .  .  .  42,271  "

The plaintiffs, following this with the testimony of James Farran and John A. Lemon, that the average yield of coal in coke is "bushel for bushel," claimed for this amount at the rate stipulated in the agreement, with interest.

The defence to the claim was two-fold : first, that the defendant was evicted from the premises leased, during the term, which it is alleged suspended the rent, and precluded any recovery after that time ; and, secondly, that if this were not so, it was shown, in point of fact, that a large portion of the coal claimed for was not taken from the Moyers land, and, further, that the defendant, if his legal defence should be overruled, was, in any event, entitled to a deduction as compensation in damages for omissions and failures of the plaintiffs to perform their covenant.

The eviction was alleged to have occurred in two ways : first, by Michael Moyers himself, and afterward by John A. Lemon under his authority, entering upon the Moyers land to mine coal, and mining coal upon it during the term; and, secondly, by bringing ejectments and issuing estrepements, and thus interfering with him injuriously in the enjoyment of his rights under the lease. It was claimed that these acts amounted to evictions which suspended the rent.

As to the entry of Moyers and John A. Lemon to mine, there was a disputed question of fact whether it was upon that part of the Moyers land contemplated by the parties to the lease and embraced in it.

On the trial, the plaintiffs called John S. Rhey, who had been appointed, by agreement of parties, to ascertain the amount of coal shipped by William Tiley from March 12th 1853 to December 1858 ; and offered his report in evidence.

This was objected to by defendant, because it did not show

[Tiley v. Moyers.]

from what bank or banks the coal was taken; and he asked permission to cross-examine the witness as to how the report was made up. The court below admitted the report in evidence, and refused to allow the cross-examination as to the manner of making it up.

The court below (TAYLOR, P. J.), after stating the material facts of the case, and the points on which the defence rested, charged the jury as follows:—

" As to the entry of Moyers and John A. Lemon to mine, there is a disputed question of fact whether it was upon that part of the Moyers land contemplated by the parties to the lease, and embraced in it. In view, however, of the peculiar terms of this agreement, and the evidence of what was done under it, we are of opinion that this entry, assuming it to have been on that part of the Moyers land in contemplation of the parties at the execution of the agreement, did not amount to an eviction such as would take away the right of the plaintiffs to claim for coal actually taken by the defendant, most of it subsequently, at a stipulated rate per bushel. It is our opinion, as the result of the hasty examination we have been compelled to give this point, that the reason of the rule that the entry of the landlord upon any part of the demised premises during the term suspends the rent entirely, and precludes the right of recovery altogether, does not here apply; and that, assuming the question of fact to be with the defendant, this case is to. be viewed and treated as falling in with the exceptions to the rule."

In commenting upon the legal effects of the writs of estrepement issued by the lessors, the learned judge said, " But for all the coal actually mined and taken by the defendant before the estrepements issued, or after they had been dissolved, or while and after Moyers and Lemon were operating on another part of the Moyers land, the plaintiffs have a right to claim, subject to a deduction in favour of the defendant, as compensation for any loss or damage sustained by him in consequence of any violations or non-performance of the covenants of the plaintiffs contained in the lease. We so instruct you, as the result of the best examination we have been able to give to the question; and in thus instructing you, we feel that we are submitting the case upon its substantial merits; for why should not Mr. Tiley pay for the coal which he actually got, if, on the other hand, he is fully and fairly compensated for any loss or injury which the evidence shows him to have sustained by reason of the improper interference of the plaintiffs with his operations, or their failure to comply with their covenants ?"

Under the head of the inquiry as to what deduction the defendant would be entitled to from the amount claimed by the plaintiffs upon their evidence, after instructing them to deduct the $780,

[Tiley *v.* Moyers.]

recovered by Jeremiah McGonigle for coal taken out of what was called the "eleven acres," the court added, "You will deduct further from that amount such sum as will fully and fairly compensate the defendant for the interruptions interposed by the estrepements issued by the plaintiffs. We believe it is not alleged that the entry and operations of Michael Moyers and John A. Lemon resulted in any actual damage. The estrepements issued in the ejectments, however, did; to what extent and what the injury was to the defendant, and what sum will compensate him therefor, you will determine from all the evidence." "The defendant has also given evidence to show the expenses, &c., to which he was subjected in defending the action of ejectment brought against him by the plaintiffs; such as counsel fees, the cost of printing paper-books, &c. This, it is our opinion, he is not entitled to claim here. The ejectment, as it appears, was brought to determine a disputed question as to the right of the parties under the agreement. The plaintiffs we think had a right to go before the proper tribunal, and resort to their action for that purpose, without subjecting themselves to liability for anything beyond the legal costs of their action if unsuccessful; being also responsible for any actual damage or interruption occasioned thereby, as we have already explicitly instructed you."

In answer to the third point put to the court by the defendant's counsel, which point was as follows, viz.: "That the lease upon which the actions have been brought, demising the plaintiffs' 'coalbank,' was the grant for the term therein stated of the vein of coal constituting the bank, and not a mere 'privilege' of taking coal out of it, and if the jury believe the plaintiffs entered into the possession of any part of the coal vein adversely, and held it against the consent of the defendant, it would amount to an eviction, and will suspend the entire rent during the time of such adverse holding," the court responded in the negative.

These instructions (under which there was a verdict and judgment for plaintiffs), together with the refusal of the court below to permit the cross-examination of John S. Rhey as to the basis of his report, were assigned here for error on writ of error by defendant below.

*John G. Miles* and *John Scott*, for plaintiff in error, as to the cross-examination of Rhey, insisted that they had a right to show mistake, if any there was, in the report: citing Sturgis and Wife *v.* Rue, 6 Penna. Law Jour. 77. As to the proposition that the re-entry upon a valuable part of the demised premises by the lessors, and the adverse holding thereof by themselves and their lessee, John A. Lemon, to the exclusion of Tiley, was such an eviction as suspended the entire rent during such adverse holding, they cited Vaughan *v.* Blanchard, 1 Yeates 175, 176; 4

[Tiley v. Moyers.]

Dallas 124; Kessler v. McConachy, 1 Rawle 441, 442; Magaw v. Lambert, 3 Barr 444, 445; Briggs v. Thompson, 9 Id. 340; Comyn on the Law of Landlord and Tenant, 6 Law Lib. 296 (marginal 523); Smith v. Raleigh, 3 Campb. 513; Burns v. Phelps, 1 Stark. 94; Caldwell v. Fulton, 7 Casey 479; Caldwell v. Copeland, 1 Wright 431; Doe v. Wood, 7 Barn. & Ald. 724; Shoenberger v. Lyon, 7 W. & S. 193; 5 Wilson's Bacon 433; The United States v. Gratiot et al., 14 Peters's Rep. 538; Moore v. Miller, 8 Barr 273; Offerman v. Starr, 2 Id. 394; Turner v. Reynolds, 11 Harris 206; Comyn v. Wheatly, Cro. Jac. 150; Caldwell v. Fulton, 7 Casey 483; Watson v. O'Hern, 6 Watts 366; Harlan et al. v. The Lehigh Coal and Navigation Company, 11 Casey 287-292.

As to the instruction of the court below relative to confining the damages to the "interruptions interposed by the estrepements," they argued that it was too narrow, that it excluded damages for costs, expenses, and delays caused by plaintiffs' breach of their implied covenant for quiet enjoyment, and also of their express covenant which prohibited others from the privilege of taking coal from the bank without the lessee's permission: citing Rawle on Covenant for Title 476; Maule v. Ashmead, 8 Harris 484; Hayes v. Bickerstaff, Vaughan 118; Lloyd v. Tomkins, 1 Term. 671; s. p. Mayor of New York v. Mabie, 1 Kernan 151; Comyn on Law of Landlord and Tenant, 6 Law Lib. 97, marg. 172-3; s. p. Rhodes v. Bullard, 7 East 116; Platt on Covenants, cited in Rawle on Covenants 170; Dobbins v. Brown, 2 Jones 80; Calthorp v. Heyton, 2 Mod. 54; Hunt v. Sanvers, T. Raym. 370; Stewart v. West, 2 Harris 338.

*Thomas White, Philip S. Noon*, and *A. Kopelin*, for defendants in error, contended :—1. That Rhey was only examined to identify the papers, not as to their contents, and therefore cross-examination was improper.

2. The grant in the lease is of an incorporeal hereditament, to be enjoyed by the lessee in common with the lessor, his heirs and assigns, and is not, therefore, the subject of an eviction as claimed here: citing Tiley v. Moyers, 1 Casey 399; Grubb v. Guilford, 4 Watts 223; Grubb v. Bayard, 2 Wall. 81; Chetham v. Williamson, 4 East 476; Johnstown Iron Company v. Cambria Iron Company, 8 Casey 241.

3. If it be not, still, owing to the peculiarity of the rent to be paid, the doctrine of eviction and suspension, as set up by the plaintiff in error, cannot be applied here so as to relieve him from the payment of the stipulated rent, upon the quantity of coal ascertained by the jury to have been taken out of the lessor's "bank" by him: citing Paul v. Witman, 3 W. & S. 407; 16 Law Lib. 112.

[Tiley *v.* Moyers.]

4. That if the working of the coal-bank on the south end of the tract by Moyers and his lessee, Lemon, was not an eviction such as suspends or reduces the amount of rent to be paid by Tiley, the answer to the third point of the defendant, and the instructions in the charge, are quite as favourable as the defendant had a right to ask : citing Kortz *v.* Carpenter, 5 Johns. 120 ; Waldron *v.* McCarty, 3 Id. 468 ; Kerr *v.* Shaw, 13 Id. 238 ; Lloyd *v.* Tompkins, 1 T. Rep. 681 ; Hain *v.* Martin, 5 Watts 180.

The opinion of the court was delivered at Pittsburgh, October 30th 1862, by

WOODWARD, J.—Eviction, such as will suspend rent, is more than a mere trespass by the lessor, or a breach, in any other form, of the implied covenant for quiet enjoyment; it is an actual expulsion of the lessee out of all or some part of the demised premises. Rent is an equivalent or consideration of a demise, and it is impossible that the rent should last longer than the demise. It is the plain dictate of common sense that a lessor shall not exact his rent whilst he holds the tenant out of possession. But this is suspension, not forfeiture. His right to rent is restored by restoring the tenant to the possession. And rent already accrued and overdue, is not forfeited by eviction. If sued for such rent, the tenant may defalk the damages which the eviction caused, but the landlord's title to rent and his consequent right to sue therefor, are unimpaired by the eviction. He cannot, however, apportion rent. If a landlord might evict his tenant from part of the demised premises, and hold him for an apportioned rent of the residue, this would be a substitution of his arbitrary will for the mutual agreement which a lease is. The law apportions rent in certain cases, but it does not allow a lessor to apportion it by means of a partial eviction.

How do these principles apply to the case in hand? The thing demised here was a coal-bank, and the rent reserved was a fixed price per bushel for the " coal taken from said bank." The term was ten years, and the lease affords satisfactory evidence that the parties did not anticipate an exhaustion of the coals in that term. It may be regarded, therefore, as a sale at the prices fixed in the lease, of so many bushels as Tiley should take during the term. He was bound to take no given quantity, though he was to forfeit the lease if he let the bank stand idle for a year, when it would yield coal. For the first year's rent, he was to put the bank in good working order ; for the second and third years, he was to pay one-quarter of a cent per bushel for each and every bushel taken from the said bank ; and for the remaining seven years, one-half cent per bushel.

Several actions of covenant were brought by the lessors in 1859, which are now, by agreement, all consolidated into one, for

[Tiley *v.* Moyers.]

the recovery of the accrued rent under this lease. They claim for so many bushels of coal, actually taken, at the contract rates. The defendant alleged an eviction from part of the demised premises. And he set up this defence, not as a ground for defalking the damages merely, but as a bar to the action. His third point was, that the "lease was a grant for the term stated of the vein of coal constituting the bank, and not a mere privilege of taking coal out of it; and if the jury believe the plaintiffs entered into the possession of any part of the coal vein adversely, and held it against the consent of the defendant, it would amount to an eviction, and will suspend the entire rent during the term of such adverse holding." He alleged no expulsion of himself, but only an adverse entry of the plaintiffs. The "term of such adverse holding" was the time he was taking coals from the Russel bank, which was one of the coal openings on the tract of land. The doctrine of the point is, therefore, that the lessors forfeited their right to recover the contract price of the coals taken by the defendant from the Russel bank, because of their entry into and mining other openings on the tract. He alleges no attempt to mine where the plaintiffs mined, and no attempt by them to mine at the Russel bank; but he will not pay for the coals he took, because they took coals.

Whether the entry of the plaintiffs was even a partial eviction of the defendant, depends on the extent of the demise, and on this point the lease is disgracefully ambiguous. The whole tract consisted of two hundred acres, on which coal had been mined at several openings. One of these was known as the Russel bank; the others, called by other names, were on a part of the tract that lay on the other side of a ravine which crossed the tract, and, in the judgment of some witnesses, severed the coal measures. The lease described the thing granted by the lessors, no otherwise than as their "coal-bank, and the appurtenances thereunto belonging." There was evidence tending to show that this was only a lease of the Russel opening, which was what the plaintiffs alleged, and other evidence that the whole tract was intended to pass by the lease, which was what the defendant alleged. Thus, the fundamental fact in the case was in dispute from first to last. The lease ought to have been so drawn as to exclude this topic of dissension. We think it was for the jury, and not for the court, to say what was the extent of the demise, because it was rather a latent ambiguity that was to be solved than an instrument of writing to be construed. The meaning of the words used is plain enough, but the extent and scope of their operation are where the ambiguity lurks. Words enough were not put into the instrument to define the boundaries of the grant, and therefore it was for the jury to define them from evidence *dehors* the instrument.

[Tiley *v.* Moyers.]

It is not easy to say from the record whether the court submitted this question to the jury, nor how they decided it if it was submitted. But if the jury believed that the defendant leased only the Russel opening, it is manifest they found no eviction, for there was no evidence from which they could find it. Regarding the lease as a grant of that particular coal-bank, and the rights of way and of timber as incidental to such a grant, Tiley has nothing to complain of, for he has enjoyed the grant and its incidents, if not free from annoyance, without expulsion and without hindrance to his mining. Why should he not pay for the coals he took? The entry of the lessors or others under them, upon other parts of the tract, was an irrelevant circumstance if only the Russel opening were leased. It was not eviction, either partial or total. Nor to justify it is it necessary to construe the grant an incorporeal hereditament. It was an entry which the owners had as good right to make as if they had never leased the Russel bank. No matter whether the interest leased were corporeal or incorporeal, if it consisted of a right to take coals from the Russel opening, the simple and all-sufficient reason why Tiley should pay for what he took, is that he agreed to do so, and was never evicted from that possession.

But now, on the other hand, suppose the jury meant to find, or under proper instructions would have found, that the grant was coextensive with the coal veins of the whole tract, and suppose that this was what the defendant insists on calling it, a corporeal hereditament, it was a sale, then, of so much coal as Tiley should take from any part of the tract in the next ten years. Now, although an exhaustion of the coal veins was not anticipated, as is apparent from the provision of the lease which bound Tiley to leave the bank in good working order, "so as not to interfere with the taking out of coal on the expiration of the lease," yet it was possible that he might, during his term, take all the coal, and by the express terms of the lease no other person was to have the privilege of taking coal during his term without his consent.

In these circumstances the lessors, without interrupting Tiley's actual mining operations, entered and took coals from the tract. What was the legal effect of that fact on this action of covenant?

The plaintiffs were guilty of a breach of covenant in this view of the case, and Tiley was entitled to set off the damages resulting therefrom against their present cause of action. That much is clear. But was it an eviction such as would suspend rent? Clearly not, because the rent was not the consideration of the possession, or of the timber leave, or of the building privileges, or of all these together; but was the equivalent, the *redditus*, for the bushels of coal actually taken? Had Tiley been prevented from taking coals, that would have been an eviction, and would

[Tiley v. Moyers.]

have suspended the rent of course. What he was to pay was to be measured by what he should take in the bushel. No coals, no rent, says the lease in substance. The possession of the land and the privileges mentioned were incidental to the coal right, but no rent was fixed for them. Nor is this action brought for ·the use and occupation of them. It is for the price of so many bushels of coal actually taken; and to such an action the facts alleged in defence amount not to a bar, but to an equitable right of set-off for the damages sustained. And the court's answer of the third point was to this effect.

Whichever way, therefore, the lease be regarded, whether as a demise of the Russel bank only, or of all the banks on the tract of land, and whether the interest granted be treated as corporeal or incorporeal, we see nothing in the instructions of the learned judge that demands reversal.

And we approve of his ruling in respect to the writs of ejectment and estrepement. For the latter, which interrupted mining operations, he allowed the jury to assess damages, but not for the ejectment which was brought to try the question of forfeiture under that provision of the lease which forbad the tenant to let the mine stand idle for a year. We agree with the judge that the plaintiffs had a right to try this question at law, and for their failure of success were punishable with costs, but not with damages to be set off in this suit.

. There is nothing in the bill of exception to evidence. The plaintiffs called Rhey only to identify his report. This entitled the defendant to cross-examine him as to the identity of the paper, but not as to its contents. If his testimony touching the contents was needed on the part of the defendant, he should have called the witness in chief, subject to cross-examination on the other side.

　　　　　　　　　　　　　　· The judgment is affirmed.

READ, J., dissents from so much of this opinion as asserts if all the coal in the tract were leased, such an entry as was made did not amount to an eviction, and suspend the rent whether payable in money or its equivalent.