## Saul et al., Trustees, v. Kugelman

*Smillie & Bean*, for plaintiff; *Maxwell Strawbridge*, for defendant.

CORSON, J., October 17, 1934.—From the facts admitted by the pleadings it would appear that the plaintiffs, as trustees under the will of Elizabeth De Queiroz, entered into a lease with the defendant, Jack Kugelman, on July 20, 1931, for certain premises in Elkins Park, this county, containing about 5 acres. It would further appear that this lease was extended for a period of 2 years from October 1, 1932.

It is admitted that the defendant entered into possession of the premises pursuant to the terms of the lease, and that he failed to pay the rent reserved thereunder to the extent of $2,800, for which the plaintiffs bring suit. Defendant admits that the $2,800 claimed by the plaintiffs is unpaid, but contends that it is not due because of an alleged eviction by the plaintiffs on August 15, 1933.

From the terms of the lease, it would appear that "the joint use of the lane leading from Ashbourne Road to the Stetson Estate is reserved by both parties". From statements of counsel, it would appear that the lane referred to leads from Ashbourne Road, through the property leased to defendant, to the home of John B. Stetson, Jr.

The defendant sets up the alleged eviction as new matter, alleging that "On or about March 1, 1933, and continuously thereafter, the servants, agents, and members of the household of the plaintiff, John B. Stetson, Jr., whose estate adjoins the premises leased to the defendant, operated the automobiles of the said plaintiff, John B. Stetson, Jr., in a most reckless and careless manner and at a high rate of speed over and upon a lane which extends through the grounds of the leased premises for approximately 400 feet, and passes within 40 feet of the dwelling house on the said leased premises, and thereby endangered the lives of the members of the defendant's household".

Defendant's new matter further avers notice to John B. Stetson, Jr., of the reckless driving complained of, and that on one occasion defendant's dog, while on said lane, was struck and injured, and several of his chickens killed by the reckless operation of automobiles, as set forth in paragraph 8 of the affidavit.

The question to be decided is whether or not upon this affidavit of defense, assuming the facts therein to be true, the affidavit is sufficient to prevent summary judgment being entered in favor of the plaintiffs. Under the terms of the lease, the defendant and the plaintiffs had the right to the joint use of the 400-foot lane. There could therefore have been no eviction if the plaintiffs had used this lane jointly with the defendant.

Can the reckless use of this lane by one of the plaintiff trustees, in his capacity as an individual, act as an eviction under the lease? Assuming for the moment that the plaintiffs had leased to the defendant a plot of land with a road running through the center of it over which the public had an easement of travel thereon, under such circumstances the defendant would be the lessee of the fee of such roadway, subject to the right of the public, which would include the rights of the lessor and the lessee to the free and common use of such roadway.

Let us assume that the landlord, in the exercise of his right to the use of such road as one of the traveling public, drove so recklessly over such roadway as to kill several chickens, injure the dog, and endanger the lives of other users of said highway, including the defendant and members of his family who might happen to be using such roadway. Would such action upon the part of the landlord justify the tenant in removing from the premises, claim an eviction, and refuse to pay rent? We feel that it would not.

The present case presents even stronger features than the illustration cited, in that the lessor in the present case is a trust estate, and, in making such lease, the trustees were acting solely in a fiduciary capacity and not as individuals. Can the trust estate, in this case the plaintiff, be penalized because of the reckless driving of the servants and members of the family of an individual trustee over a lane running through the leased premises? We feel that it cannot.

The allegations of the defendant would seem to allege a trespass upon the part of John B. Stetson, Jr., in his individual capacity in causing damage through the negligent operation of an automobile. However, the Supreme Court of Pennsylvania has said, "Eviction, such as will suspend rent, is more than a mere trespass by the lessor, or a breach, in any other form, of the implied covenant for quiet enjoyment; it is an actual expulsion of the lessee out of all or some part of the demised premises": Tiley v. Moyers, 43 Pa. 404, 410; see also Shenkin v. Schermerhorn et al., 18 D. & C. 470; Clark v. Lindsay, 7 Pa. Superior Ct. 43.

The suit for any such alleged trespass would necessarily be against John B. Stetson, Jr., in his individual capacity and not as a trustee of the plaintiff trust estate. Under such state of facts, assuming that the acts of John B. Stetson, Jr., constitute an eviction, they could not be charged as the acts of the landlord, but would have to be treated as the acts more or less of a third party.

The acts of a third party, even though they should permanently deprive a lessee of the beneficial enjoyment of the demised premises, do not constitute an eviction: Shapiro et al. v. Malarkey, 278 Pa. 78; Hastings v. Burchfield, 28 Pa. Superior Ct. 309; Barns v. Wilson, 116 Pa. 303; see also Sprenger Brewing Co. v. Fenninger, 24 Lanc. 252.

Under the statements of the affidavit of defense, no notice was ever given to Maurice Bower Saul or The Pennsylvania Company of any alleged eviction, even though, according to the defendant, the events upon which the claim of eviction is based began almost 6 months before the defendant removed from the demised premises.

Defendant himself treated the matter as an individual quarrel between himself and John B. Stetson, Jr., and not as trouble between himself and his landlord trust estate. While it is, of course, not controlling, since we must assume the truth of the facts alleged in the affidavit of defense, yet it would seem to be a peculiar circumstance that the actions which the defendant com-

plains of did not begin until almost 2 years after he had occupied the premises under the lease.

Upon the pleadings, we feel that the affidavit of defense does not aver facts sufficient in law to constitute a legal defense to the plaintiffs' claim or to prevent the entering of judgment upon the pleadings.

And now, October 17, 1934, for the reasons set forth in the foregoing opinion, plaintiffs' rule for judgment for want of a sufficient affidavit of defense is made absolute, and the prothonotary is directed to enter judgment in favor of the plaintiffs and against the defendant upon an assessment of damages to be filed by the plaintiffs in accordance with the statement of claim. The questions of law raised by the plaintiffs in their reply raising questions of law to the new matter contained in the defendant's affidavit of defense are decided in favor of the plaintiffs. An exception is allowed the defendant.

From Aaron S. Swartz, Jr., Norristown, Pa.