Kahn, Appellant, *v.* Bancamerica-Blair
Corporation.

Argued April 21, 1937. Before KEPHART, C. J., SCHAF-
FER, MAXEY, DREW, LINN, STERN and BARNES, JJ.

*Robert T. McCracken,* with him *Samuel Fessenden* and *Ulric J. Mengert,* for appellant.

*E. Stanley Richardson,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, June 25, 1937:

This action is assumpsit for rent of space in an office building. Defendant set up a counterclaim and obtained a verdict in its favor for $4,157.42, representing rent which it alleged had been unwittingly paid to plaintiff after he had resumed possession of the leased premises and evicted defendant therefrom and interest on the rent payments made. The court entered judgment on the verdict in defendant's favor and we have this appeal by plaintiff.

The parties, plaintiff as the owner of the building, and defendant as tenant, entered into a written lease for part of the third floor, about 1,200 square feet, to be used by lessee as an office. The lease was dated May 27, 1925, and ran for ten years from June 15, 1925. The rent was fixed at $4,000 per year to be paid in monthly installments of $333.33 each.

Defendant paid the rent as it matured, including the payment due on May 1, 1935. The lease provided that unless either party shall have given to the other three months' notice in writing prior to the expiration of the lease of an intention to terminate it, the lease should continue for a further period of a year. No such written notice was given.

The ten year term expired on June 15, 1935. This suit was begun in July, 1935, and claim is made to recover for the installments due June 1, 1935, and July 1, 1935, amounting to $666.66, which covers fifteen days of the old term and a month and a half of the extended term.

Defendant had removed from the space rented to it about October 1, 1927, and since that date has not occupied any part of it except that it sublet the space for a

short period in the year 1930. Defendant had negotiated with plaintiff for the cancellation of the lease, but the parties were unable to come to terms.

The basis of appellee's defense and of its counterclaim is that, unknown to it until May 17, 1935, plaintiff's superintendent, on or about June 23, 1934, moved his desk, chair, rug and telephone into a part of the demised premises, and has since occupied that part as his office. Upon learning of this situation defendant demanded repayment of the rent which it had paid subsequent to June 23, 1934, amounting to $3,762.65, and when plaintiff brought this action to recover the two installments of rent, counterclaimed for this sum with interest.

There was a conflict of testimony on the question whether defendant had given consent to the occupation of the premises by the superintendent. He testified that two representatives of defendant had called upon him and asked him to move into the offices in order to aid in subletting them. He was not able to positively identify these persons. Witnesses for defendant denied that any consent had been given. It was not disputed, however, that defendant wanted to sublet the premises and had asked plaintiff to assist in doing so.

Plaintiff testified that the only information he had as to occupancy by his superintendent was the report made to him by the latter that he was occupying the offices for the purpose of showing them to prospective subtenants of defendant and that the superintendent would have moved out at any time the space was wanted.

The main question on the trial was whether there had been an eviction. In this connection it is important to bear in mind that we are dealing with space in an office building where conditions are different from what they would be in a residence or a store property. The whole building was in charge of and under the care of a superintendent, who was responsible for its safeguarding and care and in this particular instance was endeavoring to procure a subtenant to relieve the defendant from the

burden of rent payments. It should also be borne in mind that the defendant had vacated the premises October 1, 1927, and that they had remained unoccupied, except as above mentioned, until June 23, 1934, when the superintendent set up his desk in the office.

In the view we take of the matter we deem it unimportant who the persons were who said they represented the defendant and what they said to the superintendent. If no one said anything to him, what he did in moving into the vacant space did not amount to an eviction. Nothing was done adverse to defendant. The superintendent and the plaintiff both testified that it could have had immediate possession of the space at any time. For the landlord's acts to constitute an eviction of the tenant, they must amount to an actual "interference with the tenant's beneficial enjoyment of the demised premises": *Hoeveler v. Fleming,* 91 Pa. 322. "Eviction, such as will suspend rent, is more than a mere trespass by the lessor, or a breach, in any other form, of the implied covenant for quiet enjoyment; it is an actual expulsion of the lessee out of all or some part of the demised premises": *Tiley v. Moyers,* 43 Pa. 404, 410. The landlord must intend to hold adversely to the tenant. "It has been frequently said that there must be an intention on the part of the landlord to deprive the tenant of possession or permanently interfere with his beneficial enjoyment of the premises to enable the tenant to claim an eviction. . . . The consensus of opinion seems to be that an eviction cannot be based on a mere temporary trespass by the landlord, and that such trespass by the landlord upon the premises, not intended as a permanent amotion or expulsion of the tenant, or to deprive him of the possession and enjoyment of the premises may entitle the tenant to recover damages, but will not amount to an eviction": 16 R. C. L. 687. "In order to constitute an eviction, however, there must be either an actual expulsion of the tenant or some act or omission of the landlord of an intentional and permanent character

operating to deprive the tenant of the beneficial use or enjoyment of the demised premises or of some substantial part thereof. A mere trespass by the landlord, not intended as a permanent expulsion of the tenant, and not depriving him of use or enjoyment of the premises, does not amount to an eviction": 36 C. J. 256. An eviction is "any act of permanent character done by the landlord, or with his authority, with the intention of depriving the tenant of the full enjoyment of the premises": 2 Wood on Landlord and Tenant (2d ed.) 1101. See also 2 McAdam on Landlord and Tenant (5th ed.) 1463. "In order that an eviction may take place as a result of acts on the part of the landlord involving merely an interference with the tenant's possession and enjoyment, as distinct from an actual dispossession, it is necessary that they be such as to indicate an intention on the landlord's part to deprive the tenant of possession": 2 Tiffany on Landlord and Tenant 1259. There is no evidence of an intent to hold adversely. Indeed, the evidence is the other way, that the tenant could immediately have possession if desired. A mere reëntry by the landlord after a tenant has vacated the premises is not of itself a fact from which an eviction may be inferred: *Pier v. Carr,* 69 Pa. 326; *Hochman v. Kuebler,* 53 Pa. Superior Ct. 481. In the latter case the Superior Court said (p. 485) : "It has uniformly been held that where a tenant, during the term, abandons the demised premises, the landlord is not bound, under the penalty of loss of his right to receive rent, to permit the tenement to remain wholly unoccupied with the consequent possible or probable loss of his insurance, destruction by waste, or other like injuries. The mere fact that he resumes possession is not of itself a sufficient foundation upon which to predicate either an acceptance of a surrender or an eviction. It must further be found on evidence that such resumption of possession is not merely for the protection of the property during the absence of

the tenant, but is adverse to a reoccupation of it by him and a renewal of the relations created by the lease."

After a tenant vacates the property leased, the landlord has the right to reënter and take such steps as may be necessary and proper towards subletting the premises: *Breuckmann v. Twibill,* 89 Pa. 58; *Auer v. Penn,* 99 Pa. 370; *Hochman v. Kuebler,* supra. It is admitted that appellee urged appellant to "do everything possible to rent the space." Carrying out this request the superintendent occupied it. No intention to evict can be drawn from this, indeed just the opposite conclusion is inevitable.

The defendant contends that in the event that the judgment is reversed a new trial should be awarded as there is evidence that the plaintiff waived written notice to terminate the lease at the expiration of the term and that the lease expired on June 15, 1935, by reason of parol notice and that as a result the defendant is at most only liable for the rent from June 1 to June 15. The court below refused to submit this question to the jury, holding that there was no evidence to support the defendant's contention. This determination is entirely sound. There is no evidence of any notice to plaintiff, either written or oral, that the tenant would terminate the lease at the end of the term. It is true that plaintiff was informed that defendant did not care to reoccupy the space and wished to sublet it. This information was conveyed to plaintiff as late as February, 1933, but from that time on nothing further was said concerning the lease and defendant continued to pay the rent. Even if it could be assumed that plaintiff had oral notice of defendant's intention to terminate (which is doubtful: *Fotterall v. Armour,* 218 Pa. 73, 66 A. 1001; *Gold v. Fox Film Corp.,* 304 Pa. 114, 155 A. 287; *Spiess v. Simon,* 65 Pa. Superior Ct. 311) there is no evidence that he accepted the same or acquiesced therein. In the absence of such evidence it cannot be said that he waived his right to written notice. To constitute a waiver there

must be some affirmative act on the part of the party affected showing that he so intended or acts amounting to an estoppel on his part: *Emmons v. McCreery,* 307 Pa. 62, 160 A. 722; *Dougherty v. Thomas,* 313 Pa. 287, 169 A. 219.

The judgment is reversed, with directions to the court below to enter judgment for the amount of plaintiff's claim.