In re JEWELCOR INCORPORATED, Jewelcor Jewelers and Distributors, Inc., Gruen Marketing Corp., Osaka Trading Company, Gruen Precision, Inc., Showroom Reality Co., Inc., Catalog Reality, Inc., S.H. Holdings, Inc., JC Acquisition Corp., Just Watches, Ltd., Robert J. Tabakow, Inc., Guildcraft Precision, Ltd., Panther Manufacturing, Ltd., LT, Inc. and JJ & D Realty Co., Inc., Debtors–In–Possession.

Bankruptcy Nos. 1–91–00140 to 1–91–00154.

United States Bankruptcy Court, M.D. Pennsylvania, Wilkes–Barre Division.

Jan. 4, 1995.

Steven P. Roth, Wilkes–Barre, PA, Alex J. Nobile, Exeter, PA, for debtors.

Robert Nowalis, Wilkes–Barre, PA, for M & G Equities.

Edgar H. Booth, New York City, for Unsec. Cred. Committee.

### OPINION AND ORDER

JOHN J. THOMAS, Bankruptcy Judge.

The consolidated Debtor, Jewelcor, has filed a Motion to Assume an Executory Contract, that is, a certain lease with M & G Equities. M & G has countered with a Motion to Compel Rejection of the Lease and a Motion to Compel Payment of Administrative Rent. Also pending between the parties, but not yet heard by the Court, is a Motion of Jewelcor to Compel Specific Performance of an oral settlement agreement.

The basic facts are not contested. The property in question is located at 4833 Carlisle Pike, Mechanicsburg, Pennsylvania. On May 11, 1976, Jewelcor Incorporated entered into a lease with the then owner, Main Realty

Holding Trust, for a term of twenty-five (25) years together with various options to extend that period, potentially for five successive leases of five years each.

Subsequent to execution, the real estate was conveyed from Main Realty Holding Trust to M & G Equities, the current owner.

Jewelcor Incorporated filed for relief under Chapter 11 of the United States Bankruptcy Code on October 5, 1990. On the last day to assume or reject this contract pursuant to 11 U.S.C. § 365(d)(4), Jewelcor moved to assume the lease. No hearing was immediately scheduled thereon and the Debtors Chapter 11 Plan was eventually confirmed notwithstanding the pendency of the Motion to Assume. Thereafter, some controversy occurred between Jewelcor and M & G. It appears that a meeting was conducted between the principals of both sides at which time an oral agreement was reached as to the settlement of this controversy. The terms of that agreement are now in dispute. Although those terms represent the grounds by which the Debtor is moving for specific performance, that Motion is specifically not before me at this time. Apparently, Jewelcor ceased making rental payments in May of 1991 alleging that it was no longer required to do so under the terms of the oral agreement. M & G reacted to the failure to pay rent by subsequently changing the locks to the premises in the fall of 1991 and by thereafter securing tenants to occupy some portion of the premises.

Jewelcor now desires to assume the lease but alleges that its obligation to "cure" all defaults under 11 U.S.C. § 365(b)(1)(A) ceased when M & G changed the locks. M & G, on the other hand, alleged that they changed the locks in order to gain access to this property that was falling in disrepair so that required maintenance, an obligation of the tenant, could be performed at the expense of the owner. Furthermore, M & G asserts that tenants were placed in the premises in order to mitigate their damages which were ongoing because of the failure of Jewelcor to pay rent.

There is no significant dispute that the Three Dollars ($3.00) per foot annual rental provided in the lease was substantially below the market rate which this Court will find to be Six Dollars ($6.00) per square foot annually as established by the record.

■ This Court finds that the resolution in this case must turn on whether the changing of the locks by the owner and the rental of a portion of the premises to others constituted an eviction by the landlord sufficient to excuse the Debtor from paying the rents and other charges agreed to in the lease. Our decision relating to the rights of the parties to an executory contract must turn on state law. *Matter of Penrod,* 169 B.R. 910 (Bkrtcy.N.D.Ind.1994). *In re Kong,* 162 B.R. 86 (Bkrtcy.E.D.N.Y.1993).

An analysis of the legal issues must begin with the statute, i.e. 11 U.S.C. § 365. The applicable portion of that section reads as follows:

**Executory contracts and unexpired leases.**

(a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c) and (d) of this section, the trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

(b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—

(A) cures, or provides adequate assurance that the trustee will promptly cure, such defaults;

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and

(C) provides adequate assurance of future performance under such contract or lease.

Thus, if Jewelcor wishes to assume the lease it must first (1) cure or provide adequate assurance that it will cure any default, (2) compensate or provide adequate assurance of prompt compensation to a party for

any actual pecuniary loss to that party because of such default, and lastly, (3) provide adequate assurance of future performance.

My first inquiry is whether there now exists a default under the contract. The lease provides that rental payments would be made on a monthly basis. The evidence indicates that no rent was paid for the month of May, 1991 and thereafter. Although Jewelcor asserts that a negotiated settlement relieved it from paying rent, that issue is not presently before the Court.

■ Alternatively, Jewelcor argues that M & G's conduct in changing the locks in the fall of 1991 acted as a "eviction" which relieved Jewelcor from further responsibility for payment of rent and other obligations under the lease. Jewelcor supports this position by pointing out that M & G entered into leases with Good's Furniture and with the Salvation Army during certain time periods after the fall of 1991 which further indicates that M & G reclaimed the premises to the exclusion of Jewelcor. Jewelcor asserts that any defaults in lease payments accrued only up to the changing of the locks in the fall of 1991. It has been held, under Pennsylvania law that ... "the proper measure of tenant's damages for eviction, not caused by landlord's fraud or connivance, nor in disaffirmance of lease and without intent by landlord to hold adversely to tenants, is the consideration paid for the lease." *Adler v. Sklaroff*, 154 Pa.Super. 444, 448, 36 A.2d 231, 233 (1944). Thus, if Jewelcor is correct, and M & G wrongfully evicted the Debtor, then Jewelcor's obligation to make lease payments ended when the locks were changed and the lease can be assumed upon compliance with the conditions set forth in § 365 including the default accruing until the fall of 1991.

The premises in question were used by Jewelcor as a retail outlet for its catalog sales until sometime before the bankruptcy when it closed its retail outlet and utilized the premises solely for warehouse purposes. M & G asserts that Jewelcor stopped making rental payments and allowed the premises to fall into disrepair whereby M & G became concerned over their real estate. The lease in question was a "triple net" lease meaning that the tenant would pay all charges for maintenance, taxes, and insurance together with the monthly payment for the occupation of the property to the landlord. The witnesses for M & G testified that taxes were not being paid, rent was not being paid, grass was growing up around the property and the Chapter 11 Debtor in possession was not returning its phone calls. They thereupon wished to secure access to the property and did so by changing the locks. Once in the property M & G found what they perceived to be serious electrical problems. They proceeded to retain an electrician to address those concerns and paid the insurance themselves, hired maintenance personnel to mow the grass and paid the taxes that accrued against the property.

Sometime after the changing of the locks an individual employed by Jewelcor to supervise its properties stopped at the premises and found that his keys would not open the secured premises. It was at that point in time that Jewelcor realized that the locks had been changed. There is no evidence in the record that Jewelcor did anything further despite the fact that Jewelcor fixtures were apparently still stored on the premises.

Not receiving rent, M & G secured a tenant identified as Good's Furniture to utilize the premises for two months during the period of August, 1991 to October, 1991. Subsequently, they rented the premises to the Salvation Army.

M & G asserts that there has been no eviction since the mere entry on to the property was not sufficient to warrant such a conclusion. In support of that position they cite the case of *Kahn v. Bancamerica–Blair Corporation*, 327 Pa. 209, 193 A. 905 (1937). That case suggested that the mere occupation of vacant space by a landlord in the rented property was not sufficient to constitute an eviction of the tenant.

... For the landlord's acts to constitute an 'eviction' of the tenant, they must amount to an actual 'interference with the tenant's beneficial enjoyment of the demised premises.' *Hoeveler v. Fleming*, 91 Pa. 322. 'Eviction, such as will suspend rent, is more than a mere trespass by the lessor, or a breach, in any other form, of the

implied covenant for quiet enjoyment; it is an actual expulsion of the lessee out of all or some part of the demised premises.' *Tiley v. Moyers,* 43 Pa. 404, 410. The landlord must intend to hold adversely to the tenant. 'It has been frequently said that there must be an intention on the part of the landlord to deprive the tenant of possession or permanently interfere with his beneficial enjoyment of the premises to enable the tenant to claim an eviction.... The consensus of opinion seems to be that an eviction cannot be based on a mere temporary trespass by the landlord, and that such trespass by the landlord upon the premises, not intended as a permanent amotion or expulsion of the tenant, or to deprive him of the possession and enjoyment of the premises may entitle the tenant to recover damages, but will not amount to an eviction.' *36 C.J. 256.* An eviction is 'an act of permanent character done by the landlord, or with his authority, with the intention of depriving the tenant of the full enjoyment of the premises.' *2 Wood on Landlord and Tenant (2d Ed.) 1101.* See also, *2 McAdam on Landlord and Tenant (5th Ed.) 1463.* 'In order that an eviction may take place as a result of acts on the part of the landlord involving merely an interference with the tenant's possession and enjoyment, as distinct from an actual dispossession, it is necessary that they be such as to indicate an intention of the landlord's part to deprive the tenant of possession.' *2 Tiffany on Landlord and Tenant, 1259.* (Citations omitted)

*Kahn v. Bancamerica–Blair Corporation,* 327 Pa. 209 at 212, 193 A. 905 at 906.

This recital of Pennsylvania law from the highest Court of the State of Pennsylvania is certainly persuasive in identifying what issues we must evaluate. What was the intent of M & G in entering onto the property rented to Jewelcor? Did M & G intend to deprive Jewelcor of possession? If they did, then clearly the obligation to make payments under the lease terminated. If they did not then the obligation continued less those rent-

als received from Good's Furniture and the Salvation Army which mitigate the damages.

■ This Court will find as a fact that Jewelcor stopped paying rent in 1991, because it has posited that it had reached an understanding with M & G as to the termination of the leasehold interest. When that understanding became disputed, Jewelcor's reaction was to file a Motion for Specific Performance of the understanding or agreement on April 22, 1992. Although Jewelcor hoped to surrender the premises back to the landlord, they apparently chose not to remove the fixtures on site and thus continued to occupy the real estate in question.[1]

"Where the tenant continues to occupy the premises after the acts which constitute a constructive eviction, it is a waiver of the eviction." *Harper and Bro Company v. Jackson,* 240 Pa. 312, 315, 87 A. 430 (1913).

"It has uniformly been held that where a tenant, during the term, abandons the demised premises, the landlord is not bound, under the penalty of loss of his right to receive rent, to permit the tenement to remain wholly unoccupied with the consequent possible or probable loss of his insurance, destruction by waste, or other like injuries. The mere fact that he resumes possession is not of itself a sufficient foundation on which to predicate either an acceptance of a surrender or an eviction ... after a tenant vacates the property leased, the landlord has the right to reenter and takes such steps as may be necessary and proper towards subletting the premises." *Kahn v. Bancamerica–Blair Corporation,* 327 Pa. 209, 213, 193 A. 905, 906.

Quite simply, after the "understanding" broke down the parties simply refused to communicate with each other except by the filings of litigations in this bankruptcy.

■ Although written notice of default was never sent by M & G to Jewelcor, that does not remove the obligation of the Debtor to cure such default.

Similarly, just because Jewelcor has never asked to re-enter the premises does not sug-

---

1. See Notes of Testimony page 70 of February 9, 1993. The Mechanicsburg location was apparently included in a list of storage facilities used by the Debtor as of October, 1991.

gest that such request for re-entry would have been denied by M & G.

In summary, this Court concludes that because Jewelcor continued to occupy the premises with their fixtures and without attempting to remove from the premises those fixtures in storage, we conclude that there was no eviction by M & G and Jewelcor is obligated to bring current its obligations under the lease.

■ In order to assume the lease Jewelcor is further obligated to establish adequate assurance of future payment. They have met that burden by agreeing to assign the lease to a company or require the guarantee of a company, i.e. Marketing of Jewel Services that, at the time of the hearing had a net equity of in excess of Two Million Dollars ($2,000,000.00) primarily in bank securities. Should those conditions continue we view as adequate the credit of that company as adequately assuring future payment. Certainly, the assignee of the lease must possess the same or similar financial strength evidenced on the record of this proceeding.

■ M & G has made a motion to compel the payment of administrative rent. By reason of our ruling, and by necessity, the obligations under the assumed lease will have administrative status at least until the confirmation date of the Chapter 11 Plan.

■ We find as credible the evidence offered by M & G as to the indebtedness due under the lease with the exception of the management fee which demand was not supported by the terms of the lease. If not already reduced, that claim must be credited with those receipts in mitigation of damages from Good's Furniture and from the Salvation Army. The Debtor shall have 30 days or such other time as the parties may agree in order to conclude the assumption and the assignment of the lease. This Court's finding as to the lease payments can also be considered in computing those arrearages accruing from the date of hearing until the date of assumption.

If this lease is not assumed within 30 days or within such other time as the parties may agree, then the M & G's Motion to Compel rejection will thereby be granted subject, however, to the disposition of the Motion for Specific Performance filed by the Debtor.

### *ORDER*

Debtors' Motion to Assume the Lease is hereby **GRANTED** on the conditions set forth in this Opinion.

If the lease is assumed, M & G's Motion to Compel Rejection is **DENIED.**

M & G's Motion to Compel Payment of Administrative Rent is **GRANTED** as provided in the attached Opinion subject to the assumption of this lease by the Debtors.