## In re JEWELCOR INCORPORATED, et al.

### Civil No. 95–1227.

United States District Court, M.D. Pennsylvania.

Nov. 9, 1995.

Steven P. Roth, Wilkes–Barre, PA, George A. Reihner, Elliott Reihner Siedzikowski North & Egan, Scranton, PA, Mark Joseph

---

Conway, Elliott Reihner Siedzikowski North & Egan, Scranton, PA, for debtors.

Robert C. Nowalis, Wilkes–Barre, PA, for M & G Equities.

### Memorandum and Order

NEALON, District Judge.

This matter comes before the court on an appeal by Jewelcor Incorporated (Jewelcor) [1] from an Order of United States Bankruptcy Judge John J. Thomas, dated January 4, 1995, 178 B.R. 640, which decided three motions, *viz.*, appellant's motion to assume an executory contract and appellee's motion to compel rejection of the lease and motion to compel payment of administrative rent. Briefs were filed by the appellant on August 18, 1995 and by the appellee on September 6, 1995. Appellant filed a brief in reply to the appellee's brief and the matter is now ripe for disposition. For the reasons that follow, the court will reverse the Bankruptcy Court's decision.

### Jurisdiction

Jurisdiction to hear this appeal is vested in this court by 28 U.S.C. § 158.

### Background

This dispute arises out of a lease agreement existing between Jewelcor and M & G Equities (M & G). On May 11, 1976, Jewelcor entered into a lease with Main Realty Holding Trust for the property known as 4833 Carlisle Pike, Mechanicsburg, Pennsylvania. The initial term of the lease was twenty-five years with an option to extend for an additional twenty-five years. In addi-

tion to other terms of the lease, which will be discussed below, Jewelcor was obligated to pay annual rent in the amount of approximately $3.00 per square foot. In 1989, Main Realty's interest in the premises, including the Jewelcor lease, was purchased by M & G. Jewelcor filed for bankruptcy on October 5, 1990, and subsequently filed a motion to assume the lease pursuant to 11 U.S.C. § 365(d)(4) on February 4, 1991.[2]

A dispute then arose between Jewelcor and M & G. A meeting was held in New York City in May of 1991 between Seymour Holtzman, President and CEO of Jewelcor, and George Karfunkel, a general partner of M & G. Jewelcor alleges that an agreement was reached whereby it would relinquish the lease for the sum of $188,000. M & G maintains that no such agreement was ever made.[3] What is clear from the record, however, is that based on its understanding of the alleged agreement reached at that meeting, Jewelcor stopped making rent payments in May of 1991.

M & G filed motions to compel rejection of the lease and for administrative rent. The Bankruptcy Court granted Jewelcor's motion to assume the lease but, pursuant to 11 U.S.C. § 365(b)(1)(A)[4], required it to bring current its obligations under the lease on the ground that it had not been evicted from the premises and, consequently, was responsible for continuing to pay rent.

Jewelcor appeals claiming that the Bankruptcy Court erred by: (1) holding that Jewelcor was not evicted by M & G; (2) finding that M & G acted reasonably in mitigating

---

1. On October 5, 1990, Jewelcor filed a voluntary petition in Bankruptcy pursuant to Chapter 11 of the United States Bankruptcy Code.

2. 11 U.S.C. § 365(d)(4) reads:
   Notwithstanding paragraphs (1) and (2), in a case under any chapter of this title, if the trustee does not assume or reject an unexpired lease of nonresidential real property under which the debtor is the lessee within 60 days after the date of the order for relief, or within such additional time as the court, for cause, within such 60–day period, fixes, then such lease is deemed rejected, and the trustee shall immediately surrender such nonresidential real property to the lessor.

3. The issue of the purported agreement was not before the Bankruptcy Court and is not now

before this court. Jewelcor filed a motion for specific performance of the alleged oral agreement. That motion, however, was not decided before the instant motions although the resolution of that issue would appear to be dispositive of all the issues raised in this appeal.

4. 11 U.S.C. § 365(b)(1)(A) states:
   (b)(1) If there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee—
   (A) cures, or provides adequate assurance that the trustee will promptly sure, such default . . .

damages; (3) requiring Jewelcor to pay interest to M & G; and (4) improperly considering hearsay evidence. M & G cross-appeals raising two issues, *viz.*, whether the Bankruptcy Court erred in awarding interest at the rate of 6%, rather than 10%, and by failing to award damages for certain repairs made to the premises by M & G.

## Analysis

### Standard of Review

■ Bankruptcy Rule 8013 defines the standard of review for this appeal. Findings of fact by the Bankruptcy Judge will not be set aside unless they are clearly erroneous, while issues of law are to be reviewed *de novo*. *In the Matter of Buff–Henley Paper Co.*, 75 B.R. 551, 552 (E.D.Pa.1987). "Findings of fact by a trial court are clearly erroneous when, after reviewing the evidence, the appellate court is left with the definite and firm conviction that a mistake has been committed." *In re Cohn*, 54 F.3d 1108, 1113 (3d Cir.1995) (internal quotations and citations omitted).

### The Eviction Issue

■ The first issue raised on this appeal is whether the Bankruptcy Court erred in holding that Jewelcor was not evicted from the premises. The relevant facts surrounding this issue are simple. In May of 1991 a meeting was held between the parties. Based on this meeting, Jewelcor allegedly believed that a settlement had been reached and that it was relieved of the obligation to pay rent and rental payments ceased at that time. In the fall of 1991, M & G changed the locks to the premises and leased it to Good's Furniture and then subsequently to the Salvation Army. Jewelcor contends that this constituted an eviction which relieved it of further rental payments under the lease. The Bankruptcy Court made a factual finding that Jewelcor stopped paying rent based on its understanding that a settlement was reached between it and M & G regarding termination of the lease. This court accepts that factual finding. Notwithstanding this finding, the Bankruptcy Court also concluded that despite the nonpayment of rent no eviction by M & G occurred and that M & G was entitled to rent the premises to Good's Furniture and the Salvation Army in an attempt to mitigate damages. The precise question now before this court is whether, under Pennsylvania law, a landlord's changing of the locks and reletting of a premises while fixtures of the original tenant remained on the premises, constitutes an eviction.

The issue of what constitutes an eviction under Pennsylvania Law was addressed by the Supreme Court of Pennsylvania in the case of *Kahn v. Bancamerica–Blair Corp.*, 327 Pa. 209, 193 A. 905 (1937). There, the Court held that:

> For the landlord's acts to constitute an 'eviction' of the tenant, they must amount to an actual 'interference with the tenant's beneficial enjoyment of the demised premises' ... 'Eviction, such as will suspend rent, is more than a mere trespass by the lessor ... it is an actual expulsion of the lessee out all or some part of the demised premises.'

*Id.* at 212, 193 A. 905 (internal citations omitted). The Court went on to note that "[a]fter a tenant vacates the property leased, the landlord has the right to reenter and take such steps as may be necessary and proper towards subletting the premises." *Id.* at 214, 193 A. 905. *Kahn* has remained the guiding case that Pennsylvania Courts look to in deciding eviction issues and was relied on by the Bankruptcy Judge in making his decision. In *Adler v. Sklaroff*, 154 Pa.Super. 444, 446, 36 A.2d 231 (1944), the Pennsylvania Superior Court, citing *Kahn*, pronounced that "[i]t has long been held that a forcible or physical expulsion is no longer necessary to constitute an eviction, and that any act of a landlord which deprives a tenant of that beneficial enjoyment of the premises to which he is entitled under a lease will amount in law to an eviction." The acts of the landlord must "show an intent to hold adversely to the tenant." *Id. See also Walnut Juniper Co. v. McKee*, 236 Pa.Super. 1, 344 A.2d 549 (1975) ("An eviction is any unlawful act of a landlord which deprives a tenant of the beneficial enjoyment of the demised premises and which manifests an intent to hold adversely to the tenant." *Id.* at 5, 344 A.2d 549.); *Kuriger v. Cramer*, 345 Pa.Super. 595, 498 A.2d 1331 (1985) ("An

eviction is an act by a landlord or a third person that interferes with a tenant's possessory right to the demised premises." *Id.* at 608, 498 A.2d 1331.)

■ Applying the above precedent to the facts of this case requires the resolution of two questions, to wit: did Jewelcor vacate the premises and, if not, did M & G evict Jewelcor? As to the first question, the record reveals that after Jewelcor ceased to use the premises as a site for its retail operations, it was used for warehouse purposes. Indeed, the Bankruptcy Court concluded that "... because Jewelcor continued to occupy the premises with their fixtures and without attempting to remove from the premises those fixtures in storage, we conclude that there was no eviction by M & G and Jewelcor is obligated to bring current its obligations under the lease." Bankruptcy Court Opinion, 178 B.R. at 645.[5] Since Jewelcor continued to occupy the premises, and did not abandon it voluntarily, we must consider whether M & G's actions constituted an eviction. The court will apply the clearly erroneous standard in making this determination.

■ The law in Pennsylvania is clear: "any act of a landlord which deprives a tenant of ... beneficial enjoyment of the premises ... will amount in law to an eviction." *Adler v. Sklaroff,* 154 Pa.Super. 444, 446, 36 A.2d 231 (1944). There is no dispute that M & G changed the locks to the premises and subsequently rented the premises to two different entities. Those acts certainly served to deprive Jewelcor of the use and enjoyment of the premises.

In the *Kahn* case, *supra,* the tenant, Bankamerica–Blair Corp. rented part of the third floor of Kahn's building to be used as an office pursuant to a ten year lease. Although the tenant continued to pay rent for the entire term of the lease, a few years into the lease it vacated the premises and did not occupy it except for a short period of time during which it sublet the premises. Upon the expiration of the ten years, no written

notice of an intent to terminate the lease was given and it continued for an additional one year period. At this point, the tenant ceased making rental payments. The tenant had urged the landlord to do everything possible to rent the space and, pursuant to this request, the superintendent moved a desk, chair and rug into the premises to operate as an office from which to sublet the premises. The Court noted that the landlord would have allowed the tenant to resume possession immediately if desired. Despite this, the tenant claimed that these actions constituted an eviction. *Kahn,* 327 Pa. at 209–211, 193 A. 905. The Court held that when a tenant vacates a leases premises, the landlord may take possession of the property to prevent the deterioration thereof. *Id.* at 213–214, 193 A. 905. For an eviction to occur, the landlord's actions must be adverse to reoccupation by the tenant. *Id.* The Court concluded that under the circumstances Kahn's using a part of the premises as an office in an attempt to sublet the premises did not rise to the level of an eviction.

The facts in *Kahn* are markedly distinguishable from those in the instant appeal. In that case, the tenant had vacated the premises, had approved the landlord's efforts to sublet it, the locks had not been changed, and the tenant would have been allowed to reoccupy the premises at any time. Thus, there was no act of the landlord depriving the tenant of the beneficial enjoyment of the leased premises. In the instant case, however, although M & G did have an interest in protecting the property from falling into disrepair and subletting it in an attempt to mitigate damages, the actions taken by it were "adverse to a reoccupation [by Jewelcor] and a renewal of the relations created by the lease." *Kahn,* 327 Pa. at 214, 193 A. 905. When rental payments ceased in May of 1991, M & G reacted by changing the locks to the premises in the Fall of 1991, thereby excluding Jewelcor from the premises which

---

5. As to whether Jewelcor abandoned the premises, it should also be noted that the motion to assume the lease was filed on February 4, 1991, some four months before it ceased making rental payments. This fact, combined with the fact that

Jewelcor ceased paying rent based on its understanding of an agreement between it and M & G purportedly made prior to May, 1991, make it unlikely that Jewelcor intended to abandon the premises at that time.

was then rented to other entities.[6] *See generally, Jonnet Development Corp. v. Dietrich Indus.*, 316 Pa.Super. 533, 548, 463 A.2d 1026 (1983) ("Recovery for breach of ... covenant for quiet enjoyment has been allowed in Pennsylvania where a landlord has evicted the tenant by locking up the leased premises and denying the tenant access ..." *quoting Pollock v. Morelli*, 245 Pa.Super. 388, 393, 369 A.2d 458 (1976)). A finding that the failure of a tenant, who has been involuntarily locked out of the premises and thereby deprived of possession, to attempt to remove fixtures demonstrated that there was no eviction is clearly erroneous.[7] All the elements hereinbefore identified as indicative of an intent to evict were present. Jewelcor did not abandon or vacate the building—it was locked out—and it was a clear mistake for the Bankruptcy Court to excuse the landlord from an affirmative act of eviction because the tenant did not attempt to re-enter a locked building.

The actions of M & G deprived Jewelcor the beneficial enjoyment of the premises and constituted an eviction. Therefore, the January 4, 1995 Opinion will be vacated and matter will be remanded for further proceedings.

---

6. There were no specific factual findings as to what portion of the premises were leased to the Salvation Army. However, even assuming that the entire building was not used, the *Kahn* court noted that to constitute an eviction, the landlord's encroachment must deprive the tenant of the "beneficial enjoyment of the demised premises **or of some substantial portion thereof.**" *Kahn*, 327 Pa. at 212, 193 A. 905 (emphasis added, internal quotations and citations omitted).

7. Although not addressed in the Opinion of the Bankruptcy Court, Jewelcor maintains that M & G entered into an agreement with the Salvation Army for the sale of the premises. If an agreement of sale, as distinguished from a lease, was executed while a Motion to Assume was pending, it would be more consistent with an intent to exclude rather than an effort to mitigate.