Tibbetts *v.* Prudential Insurance Co. of America,
Appellant.

Argued October 9, 1933.   Before FRAZER, C. J., SIMP-
SON, KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*F. C. Bell,* of *Bell & Brockbank,* with him *Fred Mc-Farlin,* for appellant.

*T. G. Gregory,* of *Driscoll & Gregory,* for appellee.

OPINION BY MR. JUSTICE LINN, November 27, 1933:

This is a suit for benefits claimed under permanent disability-riders attached to two policies of insurance on the life of plaintiff issued by defendant to him. Defendant agreed to waive payment of premiums after receipt of proof of such disability and, also, thereafter to make monthly payments to plaintiff at a specified rate. The verdict determined that total and permanent disability, within the terms of the contracts, existed, and that exempt premiums, in an amount not in dispute, had been collected after proof of disability had been given. The pertinent provisions of the contract are set forth in the margin.*

---

* "DISABILITY BEFORE AGE 60: WAIVER OF PREMIUMS—MONTHLY INCOME TO THE INSURED. If the Insured shall become totally and permanently disabled, either physically or mentally, from any cause whatsoever, to such extent that he (or she) is rendered wholly, continuously and permanently unable to engage in any occupation or perform any work for any kind of compensation of financial value during the remainder of his (or her) lifetime, and if such disability shall occur at any time after the payment of the first premium on this Policy, while this Policy is in full force and effect and the Insured is less than sixty years of age, and before any nonforfeiture provision shall become operative, the Company, upon receipt of due proof of such disability, will grant the following benefits.

"(1) WAIVER OF PREMIUMS.—The Company will waive the payment of any premium or premiums the due date of which......

The principal complaint now made relates to the use and effect given to opinion evidence of physicians. The plaintiff, from the time he was 18, had been employed in and about drilling wells for oil, gas or water. On March 7, 1930, then 52 years of age, and while engaged in superintending a drilling operation, he sustained serious injury requiring amputation of part of the left foot. That his physical condition deteriorated from that time, appears by the evidence of the plaintiff himself, of the physician who treated him for the injury at the time, and of three others who were called on the plaintiff's behalf to give their opinions of his condition. It also appears by the testimony of two physicians called by the defendant, one examining him, first, in August, 1930, and later at the time of the trial, the other in February, 1931, and again at the time of the trial.

The physician who treated plaintiff from March 7, 1930, was called to testify to the nature of his injuries

shall occur after receipt by the Company of said proof of such disability.

"(2) MONTHLY INCOME TO THE INSURED.—The Company will, in addition to waiving premiums, pay to the Insured monthly the sum of $10 for each $1,000 of the amount......of insurance under this Policy. The first monthly payment shall be made immediately upon receipt by the Company of due proof of such disability and subsequent payments shall be made on the first day of each month thereafter......

"Such waiver of premiums and such monthly payment shall be additional to all other benefits and obligations under this Policy and the Policy shall be continued in force......as if the Insured had actually continued to pay the premiums......

"PROOF OF CONTINUANCE OF DISABILITY.—Notwithstanding the acceptance by the Company of proof of total and permanent disability, the Insured, upon demand by the Company from time to time, but not oftener than once a year after such disability has continued for two full years, for the purpose of verifying that such disability is actually permanent and not temporary, shall furnish due proof that he (or she) actually continues in the state of disability defined above: ...... In case of failure to furnish such proof, no further premiums shall be waived and no further monthly payments shall be made on account of such disability......"

and treatment and his condition during that period. After describing the treatment, he said that plaintiff "was still totally disabled in 1931." In cross-examination he was asked this question: "But you did not regard it as permanent?" and replied, "No, sir." This witness was not called to testify to permanent disability nor asked for his opinion on the subject; yet the fact that he found total disability in 1931, which he did not then think would continue indefinitely, is now urged as support for an argument that plaintiff has not shown permanent disability within the terms of the policy, notwithstanding the evidence of plaintiff himself describing his actual condition during the period, and of physicians, called on his behalf, that the disability is permanent. The contention must be rejected. The evidence of this witness is not, as appellant suggests, necessarily in conflict with that of plaintiff's expert witnesses who testified to permanent disability. The jury was justified in concluding that plaintiff was totally disabled in July, 1930, when this doctor answered the questions on defendant's blank form for "Proof of Total and Permanent Disability," even though he was then unable to state definitely whether that condition would continue. There was ample additional evidence that plaintiff's condition grew worse instead of better. If the jury reached its ultimate conclusion by adopting the testimony of this physician, plus that of the plaintiff and the other physicians testifying to total and permanent disability, the conclusion must be accepted because the evidence supports the verdict.

We must also reject the argument of the appellant that the court should not have allowed the plaintiff to call Dr. Waterworth, who had been employed by the defendant to examine the plaintiff after the institution of suit; defendant could not have been harmed by what he said.

The evidence of the physicians, Shannon, Shaw and Sunder, supports the conclusion that plaintiff was and

is totally and permanently disabled within the terms of the contract: cf. Losnecki v. Mutual Life Ins. Co., 106 Pa. Superior Ct. 259, 161 A. 434; Cantor v. Metropolitan Life Ins. Co., 108 Pa. Superior Ct. 1, 164 A. 145. A physician called by the defendant testified that in the interval between his first examination, August 1, 1930, and his second, at the trial, there was marked deterioration in plaintiff's condition; he agreed that plaintiff was totally disabled when he saw him in August, 1930. The other physician called by defendant found marked deterioration between the first and second examinations, considered him partially disabled in a general sense, although he said that "for the present I think he is totally disabled." Appellant suggests that the evidence offered on behalf of plaintiff was insufficient to go to the jury on the question of total and permanent disability under the rule applied in Mudano v. P. R. T. Co., 289 Pa. 51, 60, 137 A. 104, that, if expert evidence is relied on to show cause and effect, the witnesses must be reasonably consistent. From what has already been said, it is obvious that the rule has no application to this record.

Appellant is not in position to complain that the judge did not instruct the jury as to what "constituted due proof of permanent disability," i. e., whether there was notice to the company: cf. Bergholm v. Peoria Life Ins. Co., 284 U. S. 489. Not only was no point for charge presented on its behalf, but plaintiff's point on the subject was affirmed and no exception was taken; the affirmance is not assigned for error; and when, at the conclusion of the charge, the judge asked counsel for suggestions for additional instruction, none was desired: Moore v. Leininger, 299 Pa. 380, 384, 149 A. 662. On call, defendant produced at the trial a notice prepared on blank forms, supplied by defendant for the purpose, entitled "Proof of Total and Permanent Disability." The blanks had been filled in and signed by plaintiff's attending physician. The notice was dated July 21, 1930, and had been sent to defendant by plaintiff. If

defendant considered it defective or otherwise essentially insufficient (the record is silent on the subject) as evidence of what it purported to be, defendant should have advised plaintiff accordingly to enable him, if possible, to amend or correct the notice. Receiving the proof without objection is evidence of waiver of defects: Fedas v. Ins. Co. of Pa., 300 Pa. 555, 560, 151 A. 285; Phila. Auto Finance Co. v. Agricultural Ins. Co., 102 Pa. Superior Ct. 1, 4, 156 A. 625.

In his opinion disposing of appellant's motion for a new trial, the learned trial judge said "......we may have erred in permitting the jury to find that proof of the plaintiff's total and permanent disability was furnished on May 1, 1930. As already indicated, however, we are satisfied that such proof was furnished on July 21, 1930." The judge then ordered a reduction of $300 in the verdict (three months at the rate of $100). Plaintiff is not complaining of that action. At the same time, the judge was of opinion that he should have instructed the jury that, if it found for plaintiff, he was entitled to interest and, having omitted such instruction, the judge calculated the interest and added it to the amount obtained after deducting the $300. The ultimate result of the corrections was to reduce by $90 the amount of the verdict rendered by the jury. The court then made an order refusing the motion for a new trial on condition that plaintiff remit that sum. The remittitur was filed and judgment was entered for the revised amount. Appellant now criticizes such conditional disposition of the new trial motion by reference to Ralston v. P. R. T. Co., 267 Pa. 278, 282 et seq., 110 A. 336. The practice there condemned was not the order that plaintiff take less than the verdict, but the attempted coercion of defendant, by also providing in the order that the new trial would be refused and judgment entered on the verdict (though found to be excessive) unless defendant agreed to pay the reduced sum within 30 days. Appellant complains that the judge had no power to add interest in the cir-

cumstances stated. No decision of this court on the subject has been cited. (In Liberty Brewing Co. v. Slovick, 21 Sch. L. R. 116, the Common Pleas of Schuylkill County declined to allow interest.) In Parkin v. Safe Deposit Co., 54 Pa. Superior Ct. 54, 59, it appeared that the court below had refused to compute and add interest after the separation of the jury, which had rendered a verdict for a certain sum with interest between specified dates, but without calculating the interest and including it in the verdict. The Superior Court added the interest, saying, "There is no doubt as to the meaning of the verdict and no uncertainty as to the amount of the debt nor the time from which interest is chargeable. While the jury should properly have included the interest in the indebtedness up to the time of the rendering of the verdict, and this should have been computed under the direction of the court before the jury was discharged, no injustice is done in making the computation of interest from the date fixed by the jury." See, too, the Motors Mortgage Corp. v. Hagerling, 106 Pa. Superior Ct. 148, 161 A. 447. In some jurisdictions it is held that, if the only issue is whether plaintiff should recover a liquidated claim on which interest would follow as matter of law, and the jury has been instructed to allow interest but returns a verdict for the amount of the claim merely, the court may add interest: McAfee v. Dix, 101 App. Div. 69, 91 N. Y. Supp. 464; Marsh v. Kendall, 65 Kansas 48, 68 Pac. 1070.

This record however presents a different question; it deals with the power of the judge to supplement the verdict after trial, when he has failed to instruct the jury that interest shall be allowed in the event of recovery of a liquidated debt. The power to amend the verdict is limited; it may be amended to conform to the real intent of the jury. As the jury was not instructed that interest might be allowed, it cannot be said that they intended to make it part of the verdict, a fact which excludes the right of the court to do so. The common remedy for

material error is to grant a new trial, but the plaintiff did not ask for a new trial; nor, when the charge was completed and the judge asked counsel for suggestions for supplementary instruction, did counsel raise the question of interest, or except to omission to charge on the subject. Such failure to raise the question at the trial would not only furnish no ground for subsequently raising the point on appeal, but would constitute waiver of the point. We then have the question whether the court of its own motion, after the trial, instead of granting a new trial, should have the power that was exercised by the learned trial judge. It is a power that in any event could of course only be exercised in a very limited class of cases, where there could be no doubt of the amount of the debt and of the date of maturity. As there must frequently be difficulty in determining questions on which such classification is based, we think that it would be unwise to establish the rule applied and now complained of by appellant. See Minor v. Boston, 201 Mass. 10, 25 L. R. A. (n. s.) 311; Fidelity & Co. v. Huse, 272 Mass. 448, 457; contra Engleberg v. Sebastiani, 207 Cal. 727. We understand from the record that the amount added as interest is $210. The record is remitted with instructions to deduct the amount so added; so modified the judgment is affirmed.