Moyer et al. (Nidetch et ux., Appellants) *v.* Diehl et al.

60

Argued October 26, 1939.

Before Keller, P. J., Cunningham, Baldrige, Stadt-
feld, Parker, Rhodes and Hirt, JJ.

*Edmund S. Leopold,* of *Scheeline, Smith & Leopold,*
for appellants.

*John Woodcock,* for appellees.

Opinion by Cunningham, J., March 2, 1940:

This is an appeal by Harry and Sarah Nidetch from
an order opening, as to Emma Diehl, a judgment for
possession of real estate, rendered pursuant to the Act
of April 20, 1905, P. L. 239, 12 PS §2571, and of which
they are the assignees. The pertinent facts were stipu-
lated of record.

Emery and Calvin Diehl, brothers, each owned a half
interest in certain premises in Claysburg, Blair County,
on which there is a dwelling house and a theatre,
operated by Harry and Sarah Nidetch, as lessees there-
of; the dwelling, as we understand, is occupied by Emma
Diehl, appellee herein. The Diehls mortgaged the en-
tire property to Frederick Wilt. Soon thereafter Cal-

vin Diehl died, intestate, leaving a widow, the above mentioned Emma Diehl, and five sons. The mortgagee, Wilt, also died and foreclosure proceedings were instituted by his executors. As no administration had been raised upon the estate of Calvin Diehl, it became necessary to serve his widow and heirs. However, the name of Austin Diehl, one of the sons, was inadvertently omitted. The Wilt executors became the purchasers at the sheriff's sale, and the deed was delivered to them on February 11, 1937.

Some question having apparently been raised about the regularity of the sheriff's sale, and the Nidetchs' being desirous of protecting their occupancy of the theatre, Emery Diehl, Emma Diehl and the five sons of Calvin Diehl by quitclaim deed, dated April 26, 1937, conveyed whatever interests they then had in the property to the Nidetchs. On April 30, 1937, two agreements were entered into between the Nidetchs and Emma Diehl.

The portion of the first agreement now material reads:

"In the event that the foreclosure proceedings heretofore instituted upon a mortgage encumbering a theatre and dwelling house adjacent thereto, in the Village of Claysburg, Township of Greenfield, shall be *vacated* and *set aside,* and the parties of the first part (the Nidetchs) *shall become successful bidders at a future sale of the said premises,* they will lease and let unto the party of the second part (Emma Diehl) said dwelling for a term commencing as of the date when they acquire title to said property and ending upon the happening of either of the following conditions, to wit: (a) the decease of the party of the second part; or (b) the sale by the parties of the first part of both the said theatre and said dwelling as one property.

"In consideration of which the party of the second part covenants and agrees to pay monthly, in advance,

rental at the rate of ten ($10) dollars per month, and further that this letting is for the individual use of the party of the second part, who may not sublet said dwelling, or permit the same to be occupied by any person other than herself and one attendant, except with the written consent of the parties of the first part first had and obtained." (Italics supplied.)

Manifestly, the purpose of this agreement was to provide a dwelling for Emma Diehl at the stipulated rental in the event of the happening of *two* contingencies, i. e., if the sheriff's sale should be "vacated and set aside" *and* if the promisors should "become successful bidders" at a subsequent sale of the property.

The second obligation executed by the Nidetchs provided: "In consideration of the execution and delivery to us of a quitclaim deed for premises located in the Township of Greenfield, County of Blair and State of Pennsylvania, described in said deed, in which Emma Diehl and the children of Calvin Diehl are grantors, and we are grantees, we promise to pay to Emma Diehl and Emory Diehl the sum of Five Hundred ($500) Dollars, upon the happening of the following condition, to wit:

"That the foreclosure proceedings heretofore instituted upon a mortgage encumbering said property shall be vacated and set aside, and upon our becoming the successful bidder[s] at a further sale upon the mortgage encumbering said premises; it is made a further condition that in the event said sale be set aside and we redeem the said property and pay said mortgage, and it is satisfied or assigned, in this event also the said sum of Five Hundred ($500) Dollars shall be paid to the said Emma Diehl and Emory Diehl."

Although no express mention is made, in the recital, of the fact that Emery Diehl was also a grantor in the quitclaim deed, the meaning of the paper seems to be that, if the contingencies specified in the first agree-

ment should occur, the Nidetchs, in addition to leasing the dwelling to Emma Diehl, agree to pay Emery Diehl and Emma Diehl, jointly, $500, or in the event that the sale be "vacated and set aside" and the Nidetchs pay, or secure an assignment of, the mortgage, the $500 shall be paid to Emery and Emma Diehl.

That the sheriff's sale be vacated and set aside is an absolute and fundamental requirement upon which each and every undertaking on the part of the Nidetchs is based. As respects the first agreement, another, and equally essential, condition is that the Nidetchs "become successful bidders" at a subsequent sheriff's sale, and as to the second agreement, that they either become successful bidders or otherwise satisfy the claim of the Wilt executors secured by the mortgage.

The Nidetchs then filed a petition in the common pleas of Blair County to set aside the sheriff's sale and duly and vigorously prosecuted these proceedings; they were terminated adversely to their contention.

On May 10, 1937, the Wilt executors instituted proceedings against Emery Diehl and the widow and five sons of Calvin Diehl, under the Act of 1905, for possession of the premises. These proceedings were actively defended by the Nidetchs, who intervened as parties defendant. The common pleas entered a judgment of possession in favor of the Wilt executors and against the defendants and intervening defendants. An appeal to this court was taken by the Nidetchs, which resulted in a modification of the judgment of the lower court; *Moyer et al. v. Diehl et al.,* 130 Pa. Superior Ct. 115, 196 A. 575.

We there held, on January 27, 1938, in an opinion by PARKER, J., that Austin Diehl's one-fifteenth interest had not passed by the sheriff's sale, but that the Wilt executors were entitled to judgment for fourteen-fifteenths with "present right of possession jointly with the defendants."

On February 28, 1938, the Wilt executors conveyed their interest in the property to Elizabeth and Ed Herr for $8,500 and on the next day the Herrs conveyed it to the Nidetchs for $10,500. Shortly after the Nidetchs (owning one-fifteenth under the quitclaim deed) thus obtained title to the outstanding fourteen-fifteenths, the Wilt executors caused the existing judgment for possession to be marked to their use. The Nidetchs then issued an alias writ for full possession. When it was served upon Emma Diehl, she filed in the court below the petition upon which the present proceedings arose, viz., her petition to show cause why the judgment for possession should not be opened as to her, alleging as her sole ground the agreements referred to above. The Nidetchs answered that the contingencies upon which the agreements were predicated had not occurred and that it had been judicially determined the sheriff's sale could not be set aside. The lower court granted the prayer of Emma Diehl and opened the judgment as to her, upon the theory that the setting aside of the sheriff's sale was not essential to the operation of the agreements, but "a mere incident which the parties at the time believed necessary in the transaction." From this action the Nidetchs now appeal.

Our review of this record has led us to a conclusion differing from that of the court below.

The only consideration for the first agreement, expressly stated therein, is the payment by appellee of the proposed monthly rental. The consideration stated in the second agreement is the execution and delivery of the quitclaim deed. We think, however, that appellee is entitled to the inference that both agreements were executed in connection with the delivery of the deed.

The present proceeding is, in effect, an effort upon the part of appellee to enforce an agreement to make a lease of real estate. As such an agreement, if valid and binding, may be specifically enforced, (*Kaufmann*

*v. Liggett,* 209 Pa. 87, 58 A. 129) there can be no technical objection to the adoption of the equitable remedy of seeking to open the judgment here in question—obtained as it was in a possessory proceeding. In our view of the matter, the only agreement with which we are concerned in this proceeding is the first. The second contract relates merely to the payment of money to appellee and Emery Diehl in the event of the happening of certain contingencies; the only method of enforcing it would be by an action upon the instrument itself.

Under the circumstances here present, we think appellee had the burden of showing that she would have had a good defense to a proceeding presently instituted by appellants, under the Act of 1905, for full possession of the premises.

As the making of the agreement was not questioned, the only issue in the court below was whether or not it had been breached by appellants. They contend there was no breach by them as their entire obligation was based upon two conditions precedent—that the sheriff's sale be vacated and set aside and that they should be the successful bidders at a subsequent sale—neither of which, without any fault upon their part, came to pass. As the second condition could not become operative unless the sale were set aside, we may confine the discussion to that condition. Appellants insist that the failure of that event to occur, after every possible effort by them to bring it about, relieved them of any further obligations under the agreement.

The contention of the appellee, adopted by the court below, seems to be that the setting aside of the sheriff's sale was neither a condition precedent nor of the essence of the contract and, therefore, as appellants subsequently acquired title to the premises (although in a way and by payment of a consideration entirely different from the manner and consideration specified in the agreement) appellee became entitled to the specific

performance by appellants of their promise to make the lease.

With respect to the questions here involved, it may be said that to constitute an undertaking a condition precedent it must appear either, "(a) that it is in terms such; or (b) that the act stipulated for must necessarily precede the act claimed to be dependent upon it": *Fame Ins. Co.'s Appeal*, 83 Pa. 396, 411.

The language of the agreement—"in the event that"—seems to us to meet the first test; such an expression aptly introduces a condition precedent. As to the second test, we think it clear that the condition—the setting aside of the sale—would have to be performed before any duty on the part of appellants could arise. If that condition were removed from the contract it is obvious that the part remaining would not express the intent of the parties; it would then become an absolute promise to make a lease of premises not owned by the prospective lessors. Conditions of this general nature have been construed in *Lacy v. Hall et al.*, 37 Pa. 360, and *Weinberg v. Shulman*, 53 Pa. Superior Ct. 64. Appellee further contends that even if the setting aside of the sale was a condition precedent, appellants' obligation under the contract was not dependent upon the exact performance of the condition. This contention requires an examination of the nature of the contract. Appellee performed an act, in consideration of which appellants gave her a promise, the promise being that they would lease the dwelling to her if a positive future event, which was not within the control of either party, should happen. Their obligation was based on the occurrence of a fortuitous event and was, therefore, in the nature of an "aleatory promise": Restatement, Contracts, Section 291.

An aleatory contract of this type differs from the ordinary contract in at least one important respect. In the ordinary contract there is a promise for a promise but

it is contemplated that there will eventually be performance for performance; one act done in consideration of another act done either before, after or at the same time as the first act. If either party fails to perform there is a failure of consideration. If the failure to perform does not go to the essence of the contract and can be compensated for in damages, the contract will be enforced despite such failure.

In an aleatory contract, however, the usual situation is one where one party does an act which is absolute in character; the consideration for that act is a promise by the other party to do an act in case a fortuitous event occurs. The promise itself is full consideration: Williston on Contracts, Section 888.

This distinction may be illustrated by reference to the aleatory promise in a policy of fire insurance. If a fire insurance company promises A. that in consideration of the payment of a certain premium it will pay him $10,000 in the event that his house is destroyed by fire caused by lightning, it would not be liable if the building should be destroyed by fire caused by an overheated flue. The house would have been destroyed in the same general manner, but the condition of the contract upon which the insurance company's liability depended did not occur.

Having in mind the nature of aleatory contracts, we are not impressed with the suggestion that the occurrence of something similar to the prescribed condition (the acquisition of title by appellants in a different manner) should be considered a substantial fulfillment of the condition precedent. Here, the appellee joined with her sons and brother-in-law in giving appellants a quitclaim deed for the manifest purpose of enabling them to contest the validity of the sheriff's sale. Appellants gave appellee their promise that if they succeeded in having the sale set aside, they would lease the dwelling to her. The promisee in an aleatory contract

must take the chance that the exact condition giving rise to the obligation of the promisor will occur. It seems to us that to permit the contention of the appellee upon this branch of the case to prevail would be equivalent to writing a new contract for the parties.

The final contention advanced in behalf of appellee is that appellants, by utilizing the benefits flowing to them under the contract after it became apparent that the condition precedent could not be fulfilled, waived the condition. Granting that such a condition may be waived by conduct (*Moore v. Carter,* 146 Pa. 492) and that acceptance and use of benefits under the contract may amount to such conduct, it is difficult to see how that principle can have any application in this case. The contention is evidently based upon the theory that appellants used the quitclaim deed to assist them in obtaining full title to the premises. As matters turned out, the appellee made no contribution toward the final acquisition of title by appellants. When she executed the quitclaim deed she had no interest in the property; her entire interest had passed to the Wilt executors. All she did was to assist in placing appellants in a position which would entitle them to intervene in the proposed proceedings to set aside the sale. As subsequent events demonstrated, that right amounted to nothing. The only interest in the property which passed under the quitclaim deed was that of Austin Diehl, and he is not a party to this proceeding.

The conclusion of a majority of the members of this court is that this is simply a case of a promise conditioned on a future event that did not and cannot happen; such a promise cannot be enforced.

The single assignment of error is to the making absolute of the rule to open the judgment as to appellee; it must be sustained.

Order reversed and petition dismissed at costs of appellee.