463 A.2d 1026

**JONNET DEVELOPMENT CORPORATION, Appellant,**

v.

**DIETRICH INDUSTRIES, INC.**

**DIETRICH INDUSTRIES, INC., Appellant,**

v.

**JONNET DEVELOPMENT CORPORATION.**

Superior Court of Pennsylvania.

Argued Nov. 9, 1981.

Filed June 24, 1983.

Reargument Denied Aug. 31, 1983.

Petition for Allowance of Appeal Denied Feb. 3, 1984.

534

David Abrams, Monroeville, for Jonnet Development, appellant (at No. 13) and appellee (at Nos. 1222, 1223, 1224 and 1225).

M.A. Nernberg, Jr., Pittsburgh, for Dietrich Industries, appellant (at Nos. 1222, 1223, 1224 and 1225) and appellee (at No. 13).

Before BECK, JOHNSON and POPOVICH, JJ.

BECK, Judge:

This case comprises three appeals founded upon a written lease agreement between Jonnet Development Corporation ("Jonnet") as the lessor, and Dietrich Industries, Inc., ("Dietrich") as the lessee.

On August 20, 1974, Jonnet and Dietrich signed a five-year, commercial space lease effective from January 1, 1975. In January of 1976 Dietrich vacated the leased premises. Although Dietrich continued thereafter to make regular monthly rental payments, Dietrich sought release from its rental obligations by bringing two actions against Jonnet. In its suits Dietrich alleged Jonnet's anticipatory repudiation of the lease agreement and constructive eviction of Dietrich from the leased premises. Subsequently, alleging Dietrich's failure to pay rent for July of 1977, Jonnet filed a complaint in confession of judgment against Dietrich.

An excellent procedural outline of the parties' litigation is provided, as follows, by the opinion of the Honorable Richard G. Zeleznik of the Court of Common Pleas of Allegheny County:

On April 29, 1976, after vacating, but while continuing to pay the monthly rentals, Dietrich filed the first of [its] actions at No. GD 76–9197. That was a Complaint in Equity seeking to enjoin Jonnet, as landlord, from confessing judgment on the lease and to nullify all rental obligations. The Complaint was based upon a theory of anticipatory repudiation.... This Court denied Dietrich's request for injunctive relief by Order dated May 24,

1976.... Subsequently, Jonnet filed preliminary objections to Dietrich's Complaint in Equity which were sustained.... Dietrich was denied equitable relief, but granted twenty days to amend, and the issue of anticipatory repudiation was preserved.

... [O]n February 7, 1977, [Dietrich] filed the second of these actions at No. GD 77–02645. In its second Complaint in Equity, Dietrich repeated its allegation of anticipatory repudiation, and added an allegation of constructive eviction. Again, Dietrich, as tenant, sought to enjoin Jonnet from confessing judgment on the lease and to escape rental obligations retroactively. This Court again denied equitable relief, and by Order dated February 28, 1977, ... consolidated the cases and certified the matter to the law side of the Court. Next, on or about August 5, 1977, Jonnet confessed judgment on the lease at No. GD 77–17850 and issued execution against Dietrich at No. GD 77–17851 in the amount in excess of $158,626.00 for default in the payment of rent [for July of 1977]. Judgment was confessed for the full accelerated balance of the rents in the amount of $144,205.50 together with attorney's fees at ten percent, calculated at $14,420.50, for a minimum demand of $158,626.00. On August 8, 1977, and on Petition of Dietrich, a Rule issued to show cause why the Jonnet judgment should not be stricken and/or opened and execution stayed. Jonnet filed a responsive pleading. Subsequently, on February 7, 1978, this Court consolidated the judgment case with the two Dietrich actions, and on June 13, 1979, ... issued its Order opening the judgment by consent [of the parties] and placed all three cases on the next jury trial list. On the date of trial, December 3, 1979, and on motion of Dietrich, this Court entered an Order striking the confessed judgment at No. GD 77–17851 which appeared to be undetermined at that time, and the case proceeded through trial on the issues raised at No. GD 77–17850, GD 76–9197 and GD 77–02645.

We will address, seriatim, the points raised by the parties' appeals, namely, the propriety of: (1) the trial court's order of December 3, 1979, purporting to strike the confessed judgment at No. GD 77–17851; (2) the directed verdict for Jonnet on the issue of Jonnet's alleged anticipatory repudiation of the lease, (3) Jonnet's reputed constructive eviction of Dietrich, and (4) the trial court's molding of the jury's verdict (money damages) in favor of Jonnet.

## I.

■ Jonnet argues that the trial court's order of December 3, 1979, improperly struck its confessed judgment against Dietrich.

An independent review of the record reveals, however, that the order of December 3, 1979, did not strike Jonnet's confessed judgment. Jonnet's confessed judgment was docketed at GD 77–17850. Only the execution on the confessed judgment was docketed at GD 77–17851, and the order of December 3, 1979, was confined to a disposition of GD 77–17851.

After Dietrich had filed two actions against Jonnet in an effort to avoid paying rent under the lease, Jonnet confessed judgment against Dietrich for non-payment of the July, 1977, installment of rent. The confession of judgment was made pursuant to the warrant of attorney contained in the parties' lease agreement, and the action to confess judgment was docketed at GD 77–17850. The praecipe for writ of execution on the confessed judgment was separately docketed at GD 77–17851. See Pa.R.C.P. No. 2957 and Pa.R.C.P. No. 236.

In accordance with Pa.R.C.P. No. 2959 Dietrich then filed a petition to strike and/or open the confessed judgment. Under Rule 2959(b) the trial court issued a rule against Jonnet to show cause why (i) Dietrich's petition should not be granted and (ii) Jonnet's execution on the confessed judgment should not be stayed. Jonnet filed a timely answer to the rule. *See* Rule 2959(b).

By consent of the parties, on June 13, 1979, the trial court entered an order opening[1] Jonnet's confessed judgment (GD 77–17850) against Dietrich.[2] But while the court's rule to show cause had referred to both the confessed judgment (GD 77–17850) and the execution on same (GD 77–17851), the court's order of June 13, 1979, failed to dispose of the execution on the confessed judgment.

The order of June 13, 1979, also consolidated Jonnet's confessed judgment action against Dietrich with Dietrich's two suits against Jonnet and provided that all three suits proceed to trial at the next jury trial listing.

On the day of trial Dietrich moved that the trial court act with respect to the execution on the confessed judgment (GD 77–17851). Accordingly, the court issued an order disposing of the execution on the confessed judgment: "And now this 3 day of Dec. 1979, it appearing that the Motion to Strike Judgment has not been determined previously, it is hereby ordered and decreed that the within judgment is stricken.[3] The balance of the proceedings as consolidated shall proceed to trial." The court order was hand-written in blue ink, and in the upper portion of the order were four docket numbers: GD 76–9197 (anticipatory repudiation), GD 77–17850 (confessed judgment), GD 77–17851 (execution on confessed judgment) and GD 77–02645 (constructive eviction). The court order was signed by the

1. " '[T]he standard [for opening a confessed judgment] ... is that of a directed verdict, viewing all evidence in the light most favorable to the petitioner and accepting as true all evidence and proper inferences therefrom supporting the defense, while rejecting the adverse allegations of the party obtaining the judgment.' " *Industrial Valley Bank and Trust Co. v. Lawrence Voluck Associates, Inc.,* 285 Pa.Super.Ct. 499, 503, 428 A.2d 156, 158 (1981) (citation omitted).

2. The notes following Pa.R.C.P. No. 2959 explain that "[a]n order of court opening a judgment does not impair the lien of the judgment or of any execution issued on it, although the court may stay the execution pending final disposition of the proceeding."

3. "A petition ... to strike is proper only when the defect in the original judgment appears on the face of the record .... If the alleged defect in the confessed judgment is based upon a matter dehors the record, the proper approach is to seek to have the court open the judgment." *Equibank, N.A. v. Dobkin,* 284 Pa.Super.Ct. 143, 147, 425 A.2d 461, 463 (1981), *allocatur denied,* May 13, 1981.

trial judge in black ink, and docket number GD 77–17851 (execution on the confessed judgment) was encircled with black ink. The trial court verdict sheet for docket GD 77–17851 states that an "[o]rder [was] entered [on] December 3, 1979, striking this judgment, and *trial proceeded as consolidated on GD 77–17850.*" (Emphasis added). The verdict sheet was signed by the trial judge who issued the aforementioned order of December 3, 1979.

A trial on the merits of the actions docketed at GD 77–17850 (confessed judgment), GD 76–9197, and GD 77–02645 was conducted before a jury. The record includes a verdict sheet corresponding to each docket number. The verdict sheet for GD 77–02645 contains the following brief statement: "See molded verdict at GD 77–17850 [confession of judgment] by the Court. Action governed by verdict entered at GD 77–17850." The verdict sheet at GD 77–17850 enumerates the money damages which Dietrich must pay to Jonnet.

From the foregoing facts it appears that the court order of December 3, 1979, "striking" GD 77–17851 (execution on confessed judgment) was intended merely to *stay* execution on the confessed judgment docketed at GD 77–17850 pending disposition of the opened confessed judgment after the jury trial.[4] Indeed, in several documents which form part of the record in this case (such as Jonnet's motion to mold the verdict in GD 77–17850) Jonnet seemingly acknowledges that the parties proceeded to trial on GD 77–17850. Thus, Jonnet's confession of judgment against Dietrich was not stricken but, rather, was opened and heard on the merits at trial. *See* Pa.R.C.P. No. 2960.

Accordingly, we affirm the trial court's order of December 3, 1979.

## II

Dietrich contends that the trial court wrongfully denied its motion for a new trial[5] which opposed directed verdicts

4. See footnote 2, *supra.*
5. See Pa.R.C.P. No. 227 and Pa.R.C.P. No. 227.1.

for Jonnet in the actions alleging Jonnet's anticipatory repudiation of the parties' lease and constructive eviction of Dietrich.

> In reviewing a motion for a new trial, we must consider all the evidence adduced at the trial to ascertain whether the verdict was manifestly against the weight of the evidence. *Ditz* [*v. Marshall*, 259 Pa.Super.Ct. 31, 35, 393 A.2d 701, 703 (1978) ]. '[T]he decision to either grant or deny a motion for new trial is within the sound discretion of the trial court and will be reversed on appeal only if the appellate court determines the trial court palpably abused its discretion', *Myers v. Gold*, 277 Pa.Super.Ct. 66, 69, 419 A.2d 663, 664 (1980), or committed 'a clear error of law.' *Eldridge v. Melcher*, 226 Pa.Super.Ct. 381, 387, 313 A.2d 750, 754 (1973), *allocatur denied.*

*Mattox v. City of Philadelphia*, 308 Pa.Super.Ct. 111, 115, 454 A.2d 46, 48 (1982).

After Dietrich and Jonnet concluded the presentation of their evidence, the trial court determined that there were no factual controversies for the jury's resolution and accordingly granted Jonnet's motion for directed verdicts against Dietrich. Thereafter, the trial court affirmed the directed verdicts for Jonnet by refusing Dietrich's request for a new trial.

> [I]t has long been held that only in a case where the facts are all clear, and there is no room for doubt, should the case be removed from the jury's consideration, and a motion for directed verdict ... be granted .... Thus, before granting a directed verdict, the court must accept as true all facts and proper inferences from testimony which tend to support the contentions of the party against whom the motion has been made, and further, must reject all testimony and inferences to the contrary.

*Stephens v. Carrara*, 265 Pa.Super.Ct. 102, 105, 401 A.2d 821, 822 (1979).

Consequently, the issue on appeal is whether the trial court directed verdicts for Jonnet where there existed disputed material facts for the jury's consideration, *Koppers Co. v. Brunswick Corp.*, 224 Pa.Super.Ct. 250, 303 A.2d 32 (1973), thus requiring a new trial.

First, we will address Dietrich's assertion that the trial court improperly directed a verdict for Jonnet in the matter of Jonnet's alleged anticipatory repudiation of the parties' lease agreement (hereinafter "Lease").

Dietrich maintains that Jonnet anticipatorily repudiated the Lease by renting space for which Dietrich held a rental option under the Lease. In pertinent part the option provision of the Lease states:

> At the Tenant's [Dietrich's] request, Landlord [Jonnet], *upon a one-year notice*, will make available to Tenant an additional 5,000 square feet in premises contiguous to the [originally] leased premises.... If the request is made after the first year of the original lease term, then the within Lease covering the original leased premises and the additional 5,000 square feet shall be extended ... for a five year term commencing with the date of the said request.

(Emphasis added.)

Therefore, by the terms of the Lease Jonnet's duty to rent additional space to Dietrich was conditioned upon Dietrich's exercising its rental option by (i) requesting more space and (ii) giving one year's notice to Jonnet. Section 224 of the Restatement (Second) of Contracts (1981) (hereinafter "Restatement") explains that "[a] condition is an event, not certain to occur, which must occur, unless its nonoccurrence is excused, before performance under a contract becomes due." *See Moyer v. Diehl*, 139 Pa.Super.Ct. 59, 11 A.2d 651 (1940); *National Products Co. v. Financial Corp.*, 238 Pa.Super.Ct. 152, 364 A.2d 730 (1975), *allocatur denied*, April 12, 1976; *see also* J. Murray, Murray on Contracts §§ 133, 134, and 139 (2d rev. ed. 1974).

Although Dietrich admits that it did not attempt to exercise its rental option, Dietrich argues that Jonnet anticipato-

rily repudiated the rental option and that such repudiation excused the non-occurrence of the condition precedent (exercise of Dietrich's rental option) to Jonnet's obligation to provide additional space.

"An anticipatory breach of a contract occurs whenever there has been a definite and unconditional repudiation of a contract by one party communicated to another. A statement by a party that he will not or cannot perform in accordance with agreement creates such a breach. See 4 *Corbin on Contracts* § 959, p. 852–856 (1951)." *Wolgin v. Atlas United Financial Corp.*, 397 F.Supp. 1003, 1014 (E.D.Pa.1975), *aff'd*, 530 F.2d 966 (3d Cir.1976); *Cameron v. Eynon*, 332 Pa. 529, 3 A.2d 423 (1939); *Parliament Industries, Inc. v. William H. Vaughan & Co.*, 287 Pa.Super.Ct. 458, 430 A.2d 981 (1980), *on reconsideration*, June 12, 1981 *petition for allowance of appeal granted*, October 2, 1981; Section 250 of the Restatement. Furthermore, Section 250 of the Restatement declares that an anticipatory repudiation results not only from an obligor's definite statement of inability or unwillingness to render future performance but also from "a voluntary affirmative act which renders the obligor unable or apparently unable to perform...." [6]

**6.** A comparison of two illustrations from the Restatement elucidates the nature of repudiatory conduct:

*Illustration 6 to Section 250:* On April 1, A contracts to sell and B to buy land, delivery of the deed and payment of the price to be on July 30. On May 1, A says nothing to B, but on that date he mortgages the land to C as security for a $40,000 loan which is not *payable* until *one year later. A's mortgaging the land is a repudiation.*

*Illustration 4 to Section 251:* On May 1, A contracts to sell and B to buy a parcel of land for $50,000, delivery of the deed and payment of the price to be on July 30. C has an interest in the land because C is a mortgagee under a mortgage that *A can discharge at any time* by payment of the mortgage debt. *B has no reasonable grounds to believe that A would commit a breach*, B could not treat A's failure to give assurances [of non-repudiation] as a repudiation, and B has no claim for damages against A.

In Illustration 4 A can remove the impediment to his future performance under the sales contract with B by paying the mortgage before the scheduled date of his performance under the contract with B. Thus, A has not anticipatorily repudiated his contract with B through conduct rendering him unable or apparently unable to per-

■ As Dietrich correctly asserts, an anticipatory repudiation by an obligor discharges an obligee's duty to perform a condition precedent.[7] *See* comment *c* to Section 253 (discussion of option contracts) and comment *b* to Section 255 of the Restatement.

If, when the time for the happening of a condition precedent arrives, it appears that the promise that is qualified by the condition cannot be performed by the promisor, the general rule is that the condition is excused. . . .

If it is reasonably certain that the promisee will not receive that which is the contemplated exchange for the performance of the condition, there is every reason why he should not be required to perform the condition as a preliminary to the recovery of compensation for defeated expectations. . . .

J. Murray, Murray on Contracts § 188 at p. 366–67; *Weinglass v. Gibson,* 304 Pa. 203, 155 A. 439 (1931).

■ However, the rule excusing the non-occurrence of conditions precedent does not apply "[w]hen the promisee could not, or would not, have performed the condition in any event [*i.e.,* whether or not the promisor repudiated] . . . ." J. Murray, Murray on Contracts § 188 at p. 367; Comment *a* to Section 255 of the Restatement; 4 A. Corbin, Corbin on Contracts § 978 at p. 924 (1951).

In the instant case the trial judge properly observed that "[t]he evidence . . . established conclusively that Dietrich had never exercised its option for the 5,000 square feet of additional space [and that] . . . Dietrich vacated the entire [originally leased] premises within thirteen months after

form. But in Illustration 6 the mortgage (and loan) term of one year extends beyond the scheduled date of A's performance under the sales contract with B, *i.e.,* the mortgage extends beyond the July 30 date for delivery of the deed to B. Thus, by entering into the year-long mortgage A rendered himself unable to perform the contract with B and thereby anticipatorily repudiated the contract with B.

**7.** Section 255 of the Restatement states that "[w]here a party's repudiation contributes materially to the non-occurrence of a condition of one of his duties, the non-occurrence is excused."

... occupancy for reasons unrelated to any need for additional space." By its conduct Dietrich manifested a complete lack of intent to perform the condition precedent (*i.e.*, exercise of the rental option) regardless of whether Jonnet did or did not anticipatorily repudiate the rental option provision of the Lease. Consequently, we hold that in this context the non-occurrence of the condition precedent could not be excused by anticipatory repudiation. Under these circumstances we therefore deem it unnecessary to decide whether Jonnet did anticipatorily repudiate the rental option, *i.e.*, whether Jonnet's rental to a third party of the existing commercial space contiguous to Dietrich's original leasehold constituted a repudiatory act rendering Jonnet unable or apparently unable to perform according to the rental option.

Assuming arguendo, without deciding, that Jonnet did not anticipatorily repudiate the rental option, we consider whether pursuant to Section 251 of the Restatement, Dietrich had "reasonable grounds ... to believe that [Jonnet would] commit a breach by non-performance ... [and could therefore] demand adequate assurance of due performance [from Jonnet] and ..., if reasonable, suspend [its own], performance ... until [it] receive[d] such assurance." [8]

█ Preliminarily, we note that Dietrich did not demand any assurances of performance from Jonnet. Moreover, in accordance with Comment *c* to Section 251 we conclude that Dietrich could not have requested assurances of performance under Section 251 because it lacked "reasonable grounds" for believing that Jonnet would repudiate the rental option.

**8.** Section 251 of the Restatement differs from Section 250 (discussed *supra* ) in that Section 250 concerns *actual repudiations* by the obligor whereas Section 251 concerns the existence or non-existence of reasonable grounds for the obligee to believe that the obligor *will repudiate* the contract. Under Section 251 an obligor has not yet announced by word or deed that he definitely is repudiating the contract, *i.e.*, that he will not perform when the time for his performance arises under the contract. But the obligor has given the obligee reasonable grounds to believe that he will repudiate the contract at some future time.

Comment *c* to Section 251 of the Restatement explains that

> [w]hether 'reasonable grounds' have arisen for an obligee's belief that there will be a breach must be determined in the light of all the circumstances of the particular case. The grounds for [the obligee's] belief must have arisen *after the time when the contract was made* and cannot be based on facts known to [the obligee] at that time. Nor, since the grounds must be reasonable, can they be based on events that occurred after that time [when the contract was made] but as to which [*the obligee] took the risk when [the obligee] made the contract.*

(Emphasis added.) *Accord,* J. Murray, Murray on Contracts § 178 at p. 351.

Here, the trial judge accurately remarked that

> Dietrich ... presented evidence to prove that Jonnet had effectively leased out nearly all of the remaining space in the same building *at the time the parties entered into contract* to furnish additional contiguous space [rental option] .... It was undisputed that Jonnet had leased most of the floor space to other tenants, including Dietrich, *at the time the option was granted. Dietrich,* as a tenant in possession, *was aware of this.*

(Emphasis added.)

Given the circumstances known to Dietrich when it entered into the rental option with Jonnet (*i.e.,* that most of the space was already leased), it is apparent that if Dietrich had grounds for suspecting Jonnet's inability to satisfy its rental option obligations, such grounds arose *before* the parties contracted for the option and consequently fail to qualify under Comment *c* to Section 251 as "reasonable grounds" which would permit suspension of Dietrich's duty to perform (*i.e.* exercise the rental option).

Accordingly, inasmuch as Dietrich's failure to exercise its rental option (i.e., the non-occurrence of the condition precedent to Jonnet's duties under the rental option) was not

excused and Dietrich lacked "reasonable grounds" for believing that Jonnet would repudiate the rental option, we affirm that portion of the trial court's order of November 20, 1980, directing a verdict for Jonnet on the issue of Jonnet's alleged anticipatory repudiation.[9]

### III

■ We will now consider Dietrich's contention that the trial court improperly directed a verdict for Jonnet in the matter of Jonnet's reputed constructive eviction of Dietrich from the originally leased premises.

Dietrich maintains that its constructive eviction from the leasehold was caused by Jonnet's breach of the express covenant for quiet enjoyment contained in the parties' Lease.[10]

While the earlier cases held that physical dispossession or actual disturbance in the possession of the tenant was necessary to constitute a breach of the covenant for quiet enjoyment, the great weight of authority now is that a constructive eviction is sufficient to destroy the relation of landlord and tenant. If the tenant is entitled to the beneficial enjoyment of the premises under the terms of his lease, and if he is deprived of this by the act of the landlord it amounts to an eviction, and will suspend the rent. The term 'eviction' is no longer restricted in its application to its original meaning of eviction by title

**9.** "Where the sole question is as to the application of the law to the facts or as to the legal effect of the facts, the case is a proper one for a directed verdict." *Corson v. Corson's, Inc.*, 290 Pa.Super.Ct. 528, 534, 434 A.2d 1269, 1272 (1981).

**10.** The parties' Lease provides as follows:
Lessor covenants that Lessor is the lawful owner of the [office building] and has the unqualified right to grant this Lease, that Tenant shall have complete and exclusive possession of the premises and if Tenant shall pay the rental and perform all the covenants and provisions of this Lease to be performed by Tenant, Tenant shall, during the term hereof and any extensions or renewals hereof, enjoy quiet and peaceful possession hereunder and Tenant's right of quiet and peaceful possession shall not be disturbed.

paramount, or to a total deprivation of the premises by the landlord ....

*Weighley v. Muller,* 51 Pa.Super.Ct. 125, 131 (1912).

The legal implication of the covenant [for quiet enjoyment], express or implied, is that the lessor will permit the tenant to enjoy fully the demised premises subject to any rights reserved to the lessor.... 'The covenant ... is breached when a tenant's possession is impaired by acts of the lessor or those acting under him....' The impairment of the lessee's possession need not be total, but the utility of the premises must be *substantially* decreased by the landlord's interference with a right or privilege which is necessary to the enjoyment of the premises....

*Checker Oil Co. of Delaware, Inc. v. Harold H. Hogg, Inc.,* 251 Pa.Super.Ct. 351, 358, 380 A.2d 815, 818–19 (1977) (emphasis added), *allocatur denied; Kahn v. Bancamerica Blair Corp.,* 327 Pa. 209, 213–14, 193 A. 905, 906–07 (1937).

Recovery for breach of this covenant [for quiet enjoyment] has been allowed in Pennsylvania where a landlord has evicted the tenant by locking up the leased premises and denying the tenant access ..., and where the landlord so *substantially* altered some essential feature of the premises as to render the property unsuitable for the purpose for which it was leased.

*Pollock v. Morelli,* 245 Pa.Super.Ct. 388, 393, 369 A.2d 458, 460 (1976) (emphasis added).

In the present case Dietrich argues that after it had vacated the premises, but while it was still paying rent, Jonnet undertook to repair several aspects of the leased premises, chiefly, one of the restrooms and electrical wiring in the ceiling of the rented office space. Moreover, Dietrich avers that Jonnet failed to properly maintain the premises after Dietrich vacated, *i.e.,* the floors were dirty and the heat was lowered. Finally, Dietrich asserts that the entrance door to the leased premises was found off the door jamb. Dietrich contends that the foregoing conditions of

the leased premises amounted to Jonnet's constructive eviction of Dietrich from the leasehold.

'It has uniformly been held that where a tenant, during the term [of his lease], abandons the demised premises, the landlord is not bound, under the penalty of loss of his right to receive rent, to permit the tenement to remain wholly unoccupied with the consequent possible or probable loss of his insurance, destruction by waste, or other like injuries. The mere fact that [the landlord] resumes possession is not of itself a sufficient foundation upon which to predicate either an acceptance of a surrender or an eviction. It must further be found on evidence that such resumption of possession is not merely for the protection of the property during the absence of the tenant, but is adverse to a reoccupation of it by [the tenant] and a renewal of the relations created by the lease.'

After a tenant vacates the property leased, the landlord has the right to reenter and take such steps as may be necessary and proper towards subletting the premises....

*Bancamerica-Blair Corp.*, 327 Pa. at 213–14, 193 A. at 907.

Here, the steps taken by Jonnet did not deprive Dietrich of the right to reenter and enjoy the leased premises without substantial impairment. Jonnet did not demonstrate any intention permanently to deprive Dietrich of any aspect of its leasehold. In this respect the instant case differs markedly from such cases as *Kelly v. Miller*, 249 Pa. 314, 94 A. 1055 (1915) [landlord closed opening which had connected two of tenant's adjoining leaseholds and thus eliminated convenient access to leasehold], and *Pollock* [landlord built mini mall which obstructed view of tenant's store], wherein there were permanent structural alterations of the original leaseholds.

Moreover, as the trial court noted,

the only conduct or activities brought out by the evidence was that of isolated and limited use by Jonnet involving maintenance and repairs, all of which occurred after

Dietrich had vacated the premises. There was no evidence of any substantial interference with Dietrich's use or right to sole and exclusive possession. Furthermore, this maintenance worked to the benefit and advantage of Dietrich. Jonnet was thus able to prepare the premises for occupancy by new tenants, and as the situation developed, Jonnet did later acquire new tenants for the same space at an increased rental, which operated to terminate Dietrich's lease obligations when the new tenants went into possession.

Accordingly, inasmuch as Jonnet's conduct did not substantially interfere with Dietrich's right to enjoy the leased premises, we affirm that portion of the trial court's order of November 20, 1980, directing a verdict for Jonnet on the issue of Jonnet's reputed constructive eviction of Dietrich.[11, 12]

## IV

■ Finally, we review the trial court's modification of the verdict for Jonnet to include interest plus Dietrich's pro rata share of the increased real estate taxes on the leasehold.

Citing *Tibbetts v. Prudential Insurance Co. of America,* 313 Pa. 310, 169 A. 382 (1933), Dietrich argues that the trial court lacked authority to "mold the verdict." In *Tibbetts* the Supreme Court of Pennsylvania held that a trial court could not amend a jury's verdict to include interest where the court had "failed to instruct the jury that interest [should] be allowed in the event of recovery of a liquidated debt." *Id.,* 313 Pa. at 316, 169 A. at 384. The court reasoned that "[a]s the jury was not instructed that interest might be allowed, it [could] not be said that [the jury] intended to make it part of the verdict, a fact which ex-

11. See footnote 9, *supra.*

12. Moreover, the parties' Lease provided that "[i]f the premises at any time be deserted or closed Lessor may enter by force, without liability to prosecution or action therefore, and may distrain for rent and also re-let the premises as agent for Tenant for any unexpired portion of the term and receive the rent therefor and apply it on this lease."

cludes the right of the court to do so." *Id.*, 313 Pa. at 316, 169 A. at 384–85; *House of Pasta, Inc. v. Mayo*, 303 Pa.Super.Ct. 298, 449 A.2d 697 (1982); *Kardibin v. Associated Hardware*, 284 Pa.Super.Ct. 586, 426 A.2d 649 (1981).

However, *Tibbetts* is inapposite in this instance because, as the trial judge explained in his opinion, the court—not the jury—computed the initial verdict:

> Dietrich complains that there were no instructions to the jury on these items [*i.e.*, interest and increased real estate taxes].... *[T]he issue of rents due and owing was taken away from the jury.* After the defenses of anticipatory repudiation and constructive eviction were eliminated, the only matter remaining was a calculation of rent from the time of Dietrich's last payment until the new tenant took over that obligation. *That simple arithmetic was done by the Court* and should have included the real estate taxes called for in the lease. Likewise, interest should have been added as a matter of course.

(Emphasis added.)

Thus, the court was fully empowered to subsequently modify its own verdict without intrusion upon the jury's province.

Moreover, unlike *Tibbetts* this case does not present an attempt by the court to modify a verdict on its own motion. Here, the verdict was amended pursuant to Jonnet's motion to mold the verdict to reflect interest and additional real estate taxes. And despite Dietrich's protestation to the contrary, this case is not controlled by *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974), wherein the Pennsylvania Supreme Court stated that an issue is preserved for appeal only where there has been a timely specific objection raised before the trial court. Since the court did not instruct the jury on the amount of the verdict to be rendered, Jonnet cannot be deemed to have waived objections to jury instructions regarding the verdict amount.

■ Concerning Dietrich's argument that the trial court's addition of the augmented real estate tax figure to the

verdict resulted in an improper variance between Jonnet's pleaded damages and the court's assessment of damages, the present case is easily distinguishable from the case of *Edison General Electric Co. v. Thackara Manufacturing Co.,* 167 Pa. 530, 31 A. 856 (1895), cited by Dietrich.

While in *Edison General Electric Co.* the Pennsylvania Supreme Court reversed the judgment due to "the variance between the averment and the assessment of damages," *id.,* 167 Pa. at 534, 31 A. at 857, the court also stated that "[t]here [was] nothing on the record to sustain ... [the] assessment." *Id.,* 167 Pa. at 534, 31 A. at 857. In *Edison General Electric Co.* the court was confronted with an ultimate claim for damages that exceeded four times the amount originally averred, "and the principle upon which such result [assessed damages] was reached nowhere appear[ed]." *Id.,* 167 Pa. at 534, 31 A. at 857.

But in the instant case the parties' Lease prescribed a formula according to which increases in real estate taxes would be added to the lessee's rental payments:

> The Tenant agrees to pay as additional rental such increase in real estate taxes levied upon the demised premises following the commencement of the term. The increase in taxes shall be prorated over the entire leaseable area of the [Lessor's office building] upon a square foot basis. Lessor shall verify in writing the increase in taxes and the effective date of the increase and the mathematical computation of the proration. Payment by the Tenant shall be made in full on or before sixty days of said written notice delivered to Tenant.

Thus, in the present case the Court knows the "principle upon which [the] result [assessed damages] was reached...." *Id.,* 167 Pa. at 534, 31 A. at 857.

Furthermore, the general rule "against a variance between allegations and proof is based upon the sound reasoning that a defendant should not be taken by surprise at trial by being called upon to defend either against matters of which he had no notice in the pleadings, or against a different cause of action." *Allegheny Ludlum Industries,*

*Inc. v. CPM Engineers, Inc.,* 278 Pa.Super.Ct. 201, 205, 420 A.2d 500, 501 (1980). Here, Dietrich cannot claim to be surprised by Jonnet's request for increased rental corresponding to augmented real estate taxes since the parties' Lease contained a provision for same. Nor does the request for rental including Dietrich's proportionate share of the tax increase vary the cause of action upon which Jonnet was suing since the action remained one for outstanding rental payments owed by Dietrich, a portion of which related to taxes on the leasehold.

Therefore, inasmuch as the trial court had the authority to conform its own verdict to the terms of the parties' Lease, we affirm that portion of the trial court's order of November 20, 1980, which confirmed its adjustment of the verdict to include interest and Dietrich's pro rata share of the increased real estate taxes.

The trial court's order of December 3, 1979, staying execution on the opened confessed judgment and the trial court's order of November 20, 1980, directing verdicts for Jonnet on the issues of anticipatory repudiation and constructive eviction as well as modifying the verdict amount to reflect interest and increased taxes are affirmed.